**In re GRAND JURY IMPANELLED OCTOBER 2, 1978 (79–2).**

**Misc. No. 81–0059.**

United States District Court, District of Columbia.

March 9, 1981.

Court of Appeals in this case. Moreover, the government has not pointed to any new case law which alters my view.

. Michael Davidson, Senate Legal Counsel, Paula A. Sweeney, Asst. Senate Legal Counsel, for plaintiff.

John Keeney, Deputy Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., District of Columbia, Washington, D. C., for defendant.

### MEMORANDUM AND ORDER

BRYANT, Chief Judge.

The Senate Committee on the Judiciary (Committee) has legislative and oversight responsibility for the Department of Justice (DOJ). The Committee is charged by Senate Rules with the responsibility for examining the application, administration and execution of those laws, or parts of laws within the Committee's legislative jurisdiction.[1] In addition, the Crime Control Act of 1976[2] requires that Congress provide legislative authorization for all DOJ appropriations. As part of its general oversight responsibilities the Committee has paid particular attention to the DOJ's Public Integrity Section. On July 23, 1980, the Committee charged the Senate Subcommittee on Improvements in Judicial Machinery (Subcommittee) with the task of examining the Public Integrity Section's investigation of Robert L. Vesco.

In the spring of 1980 the entire Committee requested access to various DOJ files to enable it to fulfill its oversight responsibilities. Attorney General Civiletti informed Senators Kennedy and Thurmond on June 23, 1980 that many DOJ files would be available, but certain administrative problems remained to be ironed out with respect to files in five cases, including the Vesco case. After a lengthy exchange of correspondence the Subcommittee charged with oversight of the Vesco investigation re-

---

1. Senate Standing Rule XXVI(8)(a).

2. Pub.Law No. 94–503 § 204, 90 Stat. 2427.

quested the DOJ to provide access to seven groups of Vesco investigation documents: (1) American Express records; (2) hotel records; (3) DOJ analyses of American Express records; (4) DOJ analyses of hotel records;[3] (5) Articles of Incorporation for Southern Ventures; (6) an inventory of all documents subpoenaed by the grand jury and (7) memoranda and recommendations prepared by the DOJ.[4]

The DOJ balked at providing access to these Vesco records and on November 24, 1980 filed a motion with this court seeking guidance on the applicability of Federal Rule of Criminal Procedure 6(e) to the Subcommittee's request. On December 24, 1980 the Subcommittee filed an amicus curiae brief opposing the Department's interpretation of Rule 6(e).

Rule 6(e) provides in part that no one shall "disclose matters occurring before the grand jury, except . . . when so directed by a court preliminarily to or in connection with a judicial proceeding." If a document at issue does not "disclose matters occurring before the grand jury" it does not fall under the protection of Rule 6(e). If the document does make such a disclosure the court is called upon to determine whether the party seeking the document does so "in connection with a judicial proceeding" and whether the party has demonstrated a particularized need for the document. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 217–23, 99 S.Ct. 1667, 1672–1675, 60 L.Ed.2d 156 (1979).

Since the Subcommittee's general oversight proceedings do not constitute a "judicial proceeding," *In re Grand Jury Investigation of Uranium Industry*, 1979–2 Trade Cases (CCH) ¶ 62,798 at pp. 78,639; 78,643– 78,644 (D.D.C. August 16, 1979), if a category of documents fall under Rule 6(e) the court need not proceed to examine any particularized need for the documents and the Subcommittee's request for that category of documents must therefore fail.

Rule 6(e)'s prohibition against "disclos[ing] matters occurring before the grand jury" is deceptive in its simplicity. The courts have generally agreed that transcripts or any account of what actually occurred before the grand jury falls under the protection of Rule 6(e).[5] The controversy stems from various attempts to block access to documents that were subpoenaed for and/or presented to the grand jury. In the seminal case in this area Chief Judge Lumbard held that

> . . . when testimony or data is sought for its own sake—for its intrinsic value in furtherance of a lawful investigation— rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same documents had been, or were presently being, examined by a grand jury. [*United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2nd Cir. 1960).]

Thus, when the Committee sought Uranium investigation documents in 1979 this court held that the mere fact that these documents had also been revealed to the grand jury did not make them protected by Rule 6(e). *In re Grand Jury Investigation of Uranium Industry, supra* at 78,642.

At the same time, in evaluating 6(e) requests the courts have been sensitive to the need for grand jury secrecy. If permitting a document that is part of a grand jury investigation to be released would encour-

---

3. Initially, the Subcommittee asked for only those American Express records and hotel records subpoenaed by the grand jury on certain specific days. This was later modified to include all American Express and hotel records accumulated by the DOJ in the process of its investigation. Letter of November 13, 1980 from Michael Davidson, Esq. to the Honorable John C. Keeney, Deputy Assistant Attorney General. *See* Memorandum of the Department of Justice concerning the Applicability of Rule 6(e) to the Requests of the Senate Subcommit-

tee on Improvements in Judicial Machinery for Disclosure of Documents (Memorandum of DOJ) at A–20.

4. Letters of October 21, 1980 and October 22, 1980 from Michael Davidson, Esq. to the Honorable John C. Keeney, Deputy Assistant Attorney General. *See* Memorandum of DOJ at A–16 & A–19.

5. *See* discussion in *In re Grand Jury Investigation of Uranium Industry, supra.*

age the flight of suspects or jury tampering or subornation of perjury or discourage persons with information from coming forward or harm the innocent [6] the courts will no doubt give careful thought to the application of Rule 6(e).

To summarize, the courts have developed two basic rules of thumb in the 6(e) area: first, documents sought for their own sake are not protected by Rule 6(e) merely because they were subpoenaed by or shown to the grand jury; and, second, documents the disclosure of which would reveal what actually occurred before the grand jury and would thus frustrate the purpose of grand jury secrecy are governed by Rule 6(e).

■ Applying the above to the seven categories of documents requested by the Subcommittee,[7] the court concludes that only the inventory of all documents subpoenaed by the grand jury and those parts of the DOJ memoranda that reveal what actually occurred before the grand jury fall under the protection of Rule 6(e). The American Express and hotel records should not be shielded simply because some of those records were seen by the grand jury. The analyses of these records presents a closer question since the Department states that the analyses were prepared by the FBI for the grand jury's use and did not pre-exist the grand jury. Memorandum of DOJ at 12. Since the Subcommittee is looking into the Public Integrity Section's performance and not the grand jury itself, these record analyses would seem to fall into that category of unprotected documents that have a significance of their own—here as part of the Public Integrity Section's investigation of Robert Vesco. The court there-fore holds that the analyses of the American Express and hotel records are not protected by Rule 6(e). The court concurs in the DOJ's view that the Articles of Incorporation for Southern Ventures falls into that category of specifically designated documents that pre-exist the grand jury and are not protected by Rule 6(e) merely because they were shown to the grand jury.[8]

■ Although the scope of Rule 6(e) is by no means self-evident, the court has concluded that the Subcommittee's request for an inventory of all documents subpoenaed by the grand jury falls within that scope. The Subcommittee is undoubtedly seeking this inventory "for its own sake"—to learn more about the Public Integrity Section's conduct—and not to discover what occurred before the grand jury. But the court shares the DOJ's concern that producing such an inventory will inevitably set a dangerous precedent by revealing a great deal about the scope and focus of the grand jury's investigation. *Securities & Exchange Com'n v. Dresser Indus.*, 628 F.2d at 1382 (purpose of 6(e) is, *inter alia*, to protect the strategy or direction of the grand jury investigation); *United States v. Stanford*, 589 F.2d 285, 291 n.6 (7th Cir. 1978) (dictum), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *Davis v. Romney*, 55 F.R.D. 337, 341–42 (E.D.Pa.1972) (dictum). The court therefore reluctantly concludes that an inventory of all documents subpoenaed by the grand jury "disclose[s] matters occurring before the grand jury" and is protected by Rule 6(e).[9]

■ Finally, the matter of the DOJ's own Vesco memoranda and recommendations must be resolved. The Subcommittee

---

6. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n.10, 99 S.Ct. 1667, 1673 n.10, 60 L.Ed.2d 156 (1979).

7. *See* pp. 113–114, *supra*.

8. *Securities & Exchange Com'n v. Dresser Indus.*, 628 F.2d 1368, 1382–84 (D.C.Cir.) (en banc) ("The fact that a grand jury has subpoenaed documents concerning a particular matter does not insulate that matter from investigation in another forum."), *cert. denied*, —— U.S. ——, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

9. Nothing in the court's opinion is intended to preclude the Subcommittee from seeking from the DOJ an inventory of *all* Vesco documents in the Department's files including documents received as a result of grand jury subpoenas. As long as the Department does not segregate those documents that were subpoenaed by the grand jury such an inventory should in no way infringe on grand jury secrecy or call Rule 6(e) into play.

**116**

acknowledged in its request that passages of these memoranda would reveal matters occurring before the grand jury and can therefore be deleted.[10] The Department responds that after making all the necessary deletions the memoranda would be unintelligible. Memorandum of the DOJ at 12. Having been immersed in Freedom of Information Act and national security cases, this court can indeed commiserate with litigants mired in heavily redacted documents. But it is for the Subcommittee and not the Department to determine what is and what is not of value to the Subcommittee oversight function. The Department should carefully redact the memoranda and recommendations, removing only those parts that contain transcripts of grand jury testimony or an account of what actually occurred before the grand jury.[11] The court therefore,

ORDERS that the Subcommittee on Improvements in Judicial Machinery's request for release of an inventory of all documents subpoenaed by the Vesco grand jury be denied; and it

FURTHER ORDERS that the Department of Justice disclose to the Subcommittee on Improvements in Judicial Machinery all Vesco American Express and hotel records, the analyses of those records and the Articles of Incorporation for Southern Ventures; and it

FURTHER ORDERS that the Department of Justice disclose to the Subcommittee on Improvements in Judicial Machinery within thirty days of the date of this order memoranda prepared by it which relate to its investigation of Robert Vesco and recommendations made by it concerning the Vesco case, including whether to use a special prosecutor and/or seek an indictment, with those parts of the memoranda and recommendations that contain transcripts of grand jury testimony or any account of what actually occurred before the grand jury redacted; and it

10. *See* letter, *supra* note 4 at A–16.

11. The DOJ submitted the memoranda and recommendations in question to the court with certain parts marked to indicate the Department's view of what clearly reveals what oc-

FURTHER ORDERS that the Department of Justice provide this court within thirty days unredacted copies of the above memoranda and recommendations, with those parts that are redacted from the copies disclosed to the Subcommittee on Improvements in Judicial Machinery marked.

curred before the grand jury. The court would like to provide the Department a second opportunity to review these materials in the light of the present memorandum.