**SENATE OF THE COMMONWEALTH OF PUERTO RICO on Behalf of JUDICIARY COMMITTEE, Appellant**

**v.**

**UNITED STATES DEPARTMENT OF JUSTICE, et al.**

No. 86–5257.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 3, 1987.

Decided June 23, 1987.

Before RUTH BADER GINSBURG, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This appeal challenges several rulings made by the district court in a Freedom of Information Act (FOIA) case. The requesting party is the Senate of the Commonwealth of Puerto Rico; the agency addressed is the Department of Justice (DOJ). Several years ago, the Senate of Puerto Rico launched an investigation into possible official complicity in a 1978 politically-inspired homicide; as part of that endeavor, the Senate submitted a FOIA request to the DOJ seeking information relating to the homicide. The DOJ released some of the material sought in the request, but claimed various FOIA exemptions for several withheld documents. In a series of rulings, the district court upheld all of the DOJ's exemption claims.

We conclude that the district court ruled correctly regarding the DOJ's claim that production of certain law enforcement records "would ... constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). We vacate the other contested rulings, however, because the record does not bear out the DOJ's exemption claims. We remand those portions of the case so that the DOJ will be afforded an opportunity to sustain its claims. If, on remand, the DOJ does not provide adequate support for the asserted exemptions, it will be obliged to release the material still sought by the Senate of Puerto Rico.

Stephen L. Braga, with whom Herbert J. Miller, Jr. and Raymond G. Larroca, Washington, D.C., were on the brief, for appellant.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

I.

On July 25, 1978, two Puerto Rican political activists, Arnaldo Rosado and Carlos Soto, were killed by Puerto Rican police officers at Cerro Maravilla, a remote mountain location some distance from San Juan. The incident soon generated fierce controversy as conflicting accounts of the day's events emerged. The official explana-

tion—that Rosado and Soto had arrived at Cerro Maravilla intending to blow up a nearby television transmission tower and had fired on the officers, who retaliated in self-defense—was contradicted by several eyewitnesses to the shooting; both the taxi driver, who had transported Rosado, Soto, and a third individual (later identified as a government undercover agent) to the scene, and a technician working at the transmission station, claimed that Rosado and Soto surrendered without a struggle and had been taken, unharmed, into custody before the fatal shots were fired.

The Special Investigations Division of the Puerto Rico Department of Justice issued a report on this affair in August 1978, absolving the police of culpability in the two deaths. Further investigations (in 1978 and 1980) were undertaken by the Civil Rights Division of the DOJ and other federal law enforcement authorities, including the Federal Bureau of Investigation (FBI), to determine whether the police officers had violated the victims' civil rights. No criminal charges were brought as a result of these inquiries, and the DOJ's investigations were formally closed on April 16, 1980.[1]

In early 1981, the Judiciary Committee of the Senate of Puerto Rico began yet another investigation into the Cerro Maravilla incident. As part of that probe, the Senate submitted to the DOJ, pursuant to FOIA, 5 U.S.C. § 552 (1982), a request for "all evidence" collected by the DOJ during its earlier investigations.[2]

The DOJ, citing a backlog of FOIA requests,[3] placed response to the Senate's request on a waiting list on which the matter remained for more than two years, a delay which was to have important repercussions for this case. Despite the unavailability of the federal records, the Senate of Puerto Rico's investigation continued, culminating in highly-publicized televised hearings in the fall of 1983. The DOJ also returned to the fray; in August 1983, it reopened its investigation on the basis of new evidence indicating that several witnesses in its original investigations had perjured themselves. Amid this mounting activity, in December 1983, the DOJ responded to the Senate of Puerto Rico's FOIA request. Referring to the reopened investigation, the DOJ asserted that most of the requested material was covered by section (b)(7)(A) of FOIA,[4] which exempts from disclosure "investigatory records compiled for law enforcement purposes ... to the extent that the production of such records would interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Certain documents—records of proceedings before a grand jury and intra-agency memoranda—were withheld on the basis of FOIA exemptions (b)(3) and (b)(5), and fifty-five items were released to the Senate.[5] The Senate of Puerto Rico pursued an administrative appeal from the decision to withhold the bulk of the requested material.

In the interim, on February 6, 1984, a federal grand jury in Puerto Rico returned a forty-four count indictment against ten police officers involved in the Cerro Maravilla incident, and a criminal trial commenced shortly thereafter. In mid-April, the DOJ's Office of Legal Policy affirmed the initial DOJ action on the Senate's FOIA request,[6] and on June 15, 1984, the Senate filed suit seeking release of the withheld items, see 5 U.S.C. § 552(a)(4)(B), along with costs and attorney fees. See id. § 552(a)(4)(E). The defendants promptly

---

1. Declaration of Deputy Assistant Attorney General James P. Turner ¶ 8 (Aug. 18, 1984), Joint Appendix (J.A.) at 31.

2. Letter from Counsel to the Judiciary Committee of the Senate of Puerto Rico to the Deputy Attorney General (May 26, 1981), J.A. at 5–6.

3. Letter from Assistant Attorney General William B. Reynolds to the Judiciary Committee of the Senate of Puerto Rico (Aug. 6, 1981), J.A. at 7.

4. Letter from Deputy Assistant James P. Turner to the Judiciary Committee (Dec. 5, 1983), J.A. at 10–12.

5. Id.

6. Letter from Acting Assistant Attorney General Roger Clegg to Counsel for the Judiciary Committee (Apr. 12, 1984), J.A. at 24–25.

moved for summary judgment solely on the basis of exemption (7)(A),[7] there being, in their words, "no question that the records at issue ... are investigatory and were compiled for a law enforcement purpose"; release of the records, defendants stated, would "obvious[ly]" interfere with the on-going enforcement proceedings.[8] The Senate of Puerto Rico filed a cross-motion for summary judgment, arguing that the defendants had not carried their burden[9] of establishing affirmatively that release of the requested documents would indeed interfere with the federal prosecution then underway.

While these motions were pending before the district judge, in late March 1985, the criminal trial in the federal district court in Puerto Rico came to an end, with guilty verdicts returned against the principal defendants. The district judge then ordered the parties to "apprise the Court of their respective positions in light of this development,"[10] and specifically directed them to address the question "whether the defendants' (7)(A) [claim] is now moot."[11] The defendants, by affidavit, acknowledged that exemption (7)(A), on the basis originally claimed, "no longer applies to the records pertaining to the events at Cerro Maravilla."[12] The district judge thereupon held that the previously-filed motions for summary judgment were moot; rejecting the Senate of Puerto Rico's request for immediate entry of judgment in its favor, the judge ordered the defendants to "re-evaluate" plaintiff's request "and to dis-

close to plaintiffs all documents not falling under a legitimate exemption."[13]

As a result of that reevaluation, approximately 900 additional pages were released to the Senate, but the DOJ continued to resist disclosure of other material in its possession. On October 5, 1985, the DOJ renewed its motion for summary judgment, supported by two declarations asserting FOIA exemptions (B)(2), (3), (5), (7)(A), (7)(C) and (7)(D) to justify the continued withholding of documents in whole or in part. Following the submission of an opposition to this motion, and the Senate's own cross-motion for summary judgment, the district court granted the defendants' motion in every particular save one; the exception related to the DOJ's claim that disclosure of nineteen pages would interfere with a separate investigation then in progress in Puerto Rico, and thus fell within exemption (7)(A).[14]

The court directed the defendants to "submit more particular facts"[15] about this separate, ongoing investigation. The defendants responded that "release of any further details ... would seriously impair those enforcement proceedings by disclosing the evidence which has been developed, the evidence which the Government is still developing, and the precise direction and scope of the proceedings."[16] The district judge then ordered production of the nineteen pages for *in camera* inspection.[17] At the conclusion of that inspection, the judge upheld the (7)(A) exemption, noting that, in view of the nature of that exemption, he could not "further describe [his] reasons"

---

7. The defendants noted that "although other FOIA exemptions are mentioned in the [accompanying] declarations, they are not relied upon at this time." Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment at 3 n. 1.

8. *Id.* at 4.

9. The "burden is on the agency to sustain" its decision to withhold information. 5 U.S.C. § 552(a)(4)(B); *see EPA v. Mink,* 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973).

10. Order, C.A. No. 84–1829 (D.D.C. Apr. 11, 1985), J.A. at 51.

11. *Id.*

12. Declaration of FOIA officer Janet L. Blizard (Apr. 20, 1985), J.A. at 52–53.

13. Order, C.A. No. 84–1829 (D.D.C. May 10, 1985), J.A. at 56–59.

14. Memorandum Opinion, C.A. No. 84–1829 (D.D.C. Feb. 7, 1986), J.A. at 109–20.

15. *Id.* at 12, J.A. at 120.

16. Declaration of Special Agent Robert J. Chester at 2–3 (Feb. 20, 1986), J.A. at 124–25.

17. Order, C.A. No. 84–1829 (D.D.C. Mar. 14, 1986), J.A. at 128–30.

for so ruling.[18] The Senate of Puerto Rico appeals from the district court's final dispositions.

## II.

The Senate's first argument on appeal relates to the district court's May 10, 1985 order holding the defendants' original (7)(A) claim moot and ordering a reevaluation of all withheld material. In the Senate's view, the court should have granted the Senate's pending summary judgment motion immediately, thereby ordering production of all requested material, once the sole justification defendants had originally pressed for withholding that material no longer applied. Given the special circumstances of this case, we hold that the district judge properly rejected the Senate's plea.

In *Holy Spirit Association v. CIA*, 636 F.2d 838, 846 (D.C.Cir.1980), *vacated in part as moot*, 455 U.S. 997, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982), we emphasized that "agencies [may] not make new exemption claims to a district court after the judge has ruled in the other party's favor," nor may they "wait until appeal to raise additional claims of exemption or additional rationales for the same claim." *See also Ryan v. Department of Justice*, 617 F.2d 781, 792 (D.C.Cir.1980) (warning of the "danger of permitting the Government to raise its FOIA exemption claims one at a time, at different stages of a district court proceeding"); *Grumman Aircraft Engineering Corp. v. Renegotiation Board*, 482 F.2d 710, 721–22 (D.C.Cir.1973) (upholding denial of agency's motion for rehearing in which it raised, for the first time, claim of executive privilege), *rev'd on other grounds*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *cf. Vaughn v. Rosen*, 523 F.2d 1136, 1143 (D.C.Cir.1975) (appeals court would not consider rationale for applying exemption not raised in district court).

■ The Senate of Puerto Rico invokes the *Holy Spirit* rule here, despite the absence of a formal district court "rul[ing] in the [Senate's] favor";[19] when the original (7)(A) exemption claims became moot, the Senate argues, the situation became functionally indistinguishable from one in which a district court had already ruled against the agency. Although we recognize that the absence of a "ruling" so denominated by the district court is not a dispositive factor, and that there may be circumstances in which withdrawal of an agency's prime exemption claim should preclude the agency's fresh assertion of additional exemptions, we are persuaded that such preclusion is not warranted in this case.

■ Our decisions in this area reflect interrelated concerns. First, the "interests of judicial finality and economy," *Holy Spirit*, 636 F.2d at 846, have special force in the FOIA context, because the statutory goals—"efficient, *prompt*, and full disclosure of information," *Jordan v. United States Dept. of Justice*, 591 F.2d 753, 755 (D.C.Cir.1978) (en banc) (emphasis added)—can be frustrated by agency actions that operate to delay the ultimate resolution of the disclosure request. *See Ryan*, 617 F.2d at 792 (delay accompanying agency's assertion of exemptions *seriatim* "could easily render the appellants' claim futile"). Furthermore, fairness to parties seeking disclosure ordinarily requires that they be accorded a full and concentrated opportunity to challenge and test comprehensively the agency's evidence regarding all claimed exemptions. *See Jordan*, 591 F.2d at 779–80. We will not allow an agency "to play cat and mouse by withholding its most powerful cannon until after the District Court has decided the case and then springing it on surprised opponents and the judge." *Grumman Aircraft*, 482 F.2d at 722.

The district judge signaled no failure to appreciate and grapple with these considerations when he allowed the DOJ to reevalu-

---

**18.** Order, C.A. No. 84–1829 (D.D.C. Mar. 26, 1986), J.A. at 131–32.

**19.** As noted earlier, *see supra* p. 579, the cross-motions for summary judgment were still pending when the district court issued its May 10 order.

ate its exemption claims in light of the intervention of events that rendered its prime claim moot. The record does not suggest anything less than a good faith belief on the DOJ's part that it was fully justified in withholding the documents in question for the reason claimed. Nor does the Senate contend that the DOJ acted irresponsibly, with a purpose to delay, in failing to anticipate the swift course of the federal prosecution in Puerto Rico. In short, the DOJ cannot fairly be charged with playing cat to the Senate of Puerto Rico's mouse, nor can the Senate fairly claim to have been taken completely by surprise by the additional exemption claims.[20]

█ We thus reject the Senate's contention that the termination of the trial in Puerto Rico, and the attendant collapse of defendants' original (7)(A) claim, are "functional[ly] equivalent" to an adverse ruling by the district court. We note, moreover, that even if the district court had "ruled in the Senate's favor" by granting its motion for summary judgment, this case might have been the exceptional one in which the DOJ would have been granted permission to raise additional exemption claims on appeal. As this court has observed:

> From a practical standpoint, ... an agency might be led to invoke an exemption on appeal for the first time ... in order to gain a tactical advantage over the requestor. Clearly, it is not consistent with the broad remedial purpose of the FOIA to permit such agency maneuvering. Second, an agency might be forced to invoke an exemption for the first time on appeal because of *a substantial change in the factual context of the case or because of an interim development in applicable legal doctrine....* [The agency] should be able to cite all possibly relevant exemptions well before the appellate stage.... [However, if] the value of the material which otherwise would be subject to disclosure were obviously high ..., and it appeared highly likely was intended to be

protected by one of the nine enumerated exemptions, then under 28 U.S.C. § 2106, the appellate court would have discretion to "remand the cause and ... require such further proceedings to be had as may be just under the circumstances." *Such discretion might likewise be exercised in the second example above-cited.*

*Jordan,* 591 F.2d at 780 (emphasis added); *see also Washington Post Co. v. Department of Health and Human Services,* 795 F.2d 205, 208–09 (D.C.Cir.1986) (government cannot raise new element of a numbered exemption after remand absent " 'extraordinary circumstance[s]' justifying an exception to the rule that the government must assert all of its exemptions in the original proceedings before the district court"). We make no broad pronouncement here on whether or when conclusion of the law enforcement proceedings with reference to which a (7)(A) claim is advanced constitutes a "substantial change in the factual context of the case" sufficient to invoke an appellate court's discretion under 28 U.S.C. § 2106 to require "further proceedings ... just under the circumstances." It suffices to hold that the district judge did not abuse *his* discretion when he evaluated the situation at hand as one inappropriate for application of a rigid "press it at the threshold, or lose it for all times" approach to the agency's FOIA exemption claims.

### III.

We turn next to the Senate's challenges to the district court's rulings upholding the DOJ's invocation of exemptions (b)(3), (b)(5), and (b)(7)(C) to justify the continued withholding of specified material.

### A. *Exemption (b)(3): Grand Jury Exhibits*

In its May 1981 request, the Senate asked for "all evidence collected by the U.S. Department of Justice and any of its sub-divisions" regarding the Cerro Maravilla events,[21] and added the following explanatory paragraph:

---

**20.** *See supra* p. 579 and note 7.

**21.** Letter, *supra* note 2.

[This] request should be understood as to include all evidence, including sworn statements, photographs, police reports, pathological studies, ballistic and other forensic tests, etc., collected by the Department directly or received by the Department from local agencies or any other party interested in the matter, *including, but not limited to, evidence submitted for the consideration of any Grand Jury or magistrate(s).*[22]

Exemption (b)(3) of FOIA permits an agency to withhold material "specifically exempted from disclosure by statute ... provided that such statute [requires withholding] in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). The Federal Rules of Criminal Procedure, in turn, prohibit, with exceptions not relevant here, disclosure of "matters occurring before [a] grand jury." FED. R.CRIM. P. 6(e)(2). Relying on the incorporation of Rule 6(e) within exemption (b)(3),[23] the DOJ contended that "all grand jury transcripts and exhibits are exempt from mandatory disclosure,"[24] thus "there can be no question that the exhibits considered by the grand jury investigating the Cerro Maravilla incident are entitled to protection pursuant to this exemption."[25]

■ We have never embraced a reading of Rule 6(e) so literal as to draw "a veil of secrecy ... over all matters occurring in the world that happen to be investigated by a grand jury." *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.) (*en banc*), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers; as the district court correctly observed, the touchstone is whether

disclosure would "tend to reveal some secret aspect of the grand jury's investigation" such matters as "'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'"[26] The disclosure of information "coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury" is not prohibited. *Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 870 (D.C.Cir.1981); *see also Dresser,* 628 F.2d at 1383 ("The fact that a grand jury has subpoenaed documents concerning a particular matter does not insulate that matter from investigation in another forum."); *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir.1960) (Rule 6(e)'s purpose is not "to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury"). Automatically sealing all that a grand jury sees or hears would enable the government to shield any information from public view indefinitely by the simple expedient of presenting it to the grand jury.

In *Dresser,* we upheld enforcement of an SEC subpoena for documents that had also been the subject of a grand jury subpoena. In holding that compliance with the SEC's subpoena was not blocked by Rule 6(e), we stressed first, that the documents at issue were created for independent corporate purposes unrelated to the grand jury's investigation, and second, that they were subpoenaed directly from Dresser without mention of the grand jury. *Dresser,* 628 F.2d at 1382–83. Therefore, disclosure to

---

**22.** *Id.* (emphasis added).

**23.** Although rules of procedure promulgated by the Supreme Court generally do not qualify as "statutes" for exemption (b)(3) purposes, *see Founding Church of Scientology v. Bell,* 603 F.2d 945, 952 (D.C.Cir.1979), Rule 6(e) does so qualify because it was specifically adopted by an Act of Congress. *Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 867 (D.C.Cir.1981).

**24.** Turner Declaration, *supra* note 1, ¶ 18, J.A. at 37.

**25.** Memorandum of Points and Authorities in Support of Defendants' Renewed Motion for Summary Judgment at 6.

**26.** Memorandum Opinion, C.A. No. 84–1829, at 5 (D.D.C. Feb. 7, 1986), J.A. at 113, quoting *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1382 (D.C. Cir.) (*en banc*), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

the SEC would reveal "only what has occurred in Dresser's foreign operations," not "what has occurred before the grand jury." *Id.* at 1383.

██ The district court held *Dresser* inapplicable to this case because "[p]laintiff's request *expressly includes* grand jury exhibits." [27] We agree that the situation here is unlike the one presented in *Dresser*, for here, both the existence and the general scope of the grand jury's inquiry concerning the Cerro Maravilla episode are known to all.[28] Therefore, the documents sought by the Senate of Puerto Rico *may* "elucidate the inner workings of the grand jury," *Fund for Constitutional Government*, 656 F.2d at 870, as the documents sought by the SEC in *Dresser* did not. It remains incumbent upon the agency, however, to make the requisite showing.

██ The mere fact that the Senate of Puerto Rico's request "included" grand jury exhibits is not dispositive of the DOJ's Rule 6(e) claim. The request—for "all evidence" pertaining to the Cerro Maravilla affair—was not *limited* to grand jury exhibits; had the DOJ released these exhibits, along with the over 1,000 pages of non-grand jury material it did release,[29] there is nothing in this record to suggest that the Senate, or any third party, would have been able to determine *which* documents had been submitted to the grand jury. Absent that identifying information, it is difficult to see how disclosure would reveal anything concerning the inner workings of the grand jury.[30]

The district judge stated that "[t]he release of grand jury exhibits *will reveal much* about the scope and focus of the grand jury's investigation," [31] but he did not indicate the record support for that statement. The DOJ's submission on this matter consisted in its entirety of the following recitation:

2000 pages of Grand Jury material. Although the Plaintiff no longer contests the withholding of the Grand Jury transcripts, the Plaintiff seeks the four boxes

---

**27.** *Id.* at 6, J.A. at 114 (emphasis added).

**28.** *Cf. Dresser*, 628 F.2d at 1383 ("In fact, if the grand jury proceedings are genuinely secret, other agencies and courts will not know the subject matter of the grand jury investigation and thus will not be able to determine whether their own inquiry would overlap that of the grand jury.").

**29.** *See* Brief for Appellees at 2 ("several hundred pages of material" released to the Senate of Puerto Rico); *id.* at 4 ("204 pages of material from the Civil Rights Division and 681 pages from the FBI" released).

**30.** *In re Grand Jury Impanelled October 2, 1978 (79-2)*, 510 F.Supp. 112 (D.D.C.1981) is instructive. The United States Senate requested access to various DOJ files concerning an investigation of financier Robert Vesco, including DOJ's analyses of Vesco's American Express and hotel records and an inventory of all documents subpoenaed by the grand jury investigating Vesco's affairs. Notwithstanding that the analyses were "prepared by the FBI for the grand jury's use and did not pre-exist the grand jury," *id.* at 115, they were not protected by Rule 6(e) insofar as they were "sought for [their] own sake ... rather than to learn what took place before the grand jury." *Id.* at 114, quoting *Interstate Dress Carriers*, 280 F.2d at 54. The document inventory was protected, since it would "reveal[ ] a great deal about the scope and focus of the grand jury's investigation," *id.;* however, the

court left open the possibility that the Senate could seek "an inventory of *all* Vesco documents in the [DOJ's] files including documents received as a result of grand jury subpoenas," *id.* at 115 n. 9, which "should in no way infringe on grand jury secrecy" as long as the DOJ "does not segregate those documents that were subpoenaed by the grand jury." *Id.*

This approach is consistent with the Supreme Court's recent treatment of the nature of the "disclosure" prohibited by Rule 6(e). In *United States v. John Doe, Inc. I*, —— U.S. ——, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987), the Court held that continued use of grand jury materials in a civil action by a DOJ attorney who had been involved in the grand jury investigation did not constitute "disclosure" within the meaning of the Rule. *Id.* at 1659-60. Although the decision to file the civil complaint was based on evidence obtained by the grand jury, *id.* at 1661 n. 6, the filing of the complaint did not in itself constitute disclosure of that evidence since the complaint "does not quote from or refer to any grand jury transcripts or documents subpoenaed by the grand jury, and does not mention any witnesses before the grand jury, or even refer to the existence of a grand jury." *Id.* at 1661. No third party, reading this complaint, would learn anything of what took place within the grand jury chambers.

**31.** Memorandum Opinion, C.A. No. 84–1829 at 6 (D.D.C. Feb. 7, 1986) (emphasis added), J.A. at 114.

of Grand Jury exhibits presented in conjunction with these 2000 pages of testimony and exhibits. This material is withheld pursuant to 5 U.S.C. 552(b)(3) [FED.R.CRIM.P. 6(e)] in order to protect the secrecy of the Grand Jury process.[32] This says little more than that the material has been presented to the grand jury; unless this fact alone automatically exempts the material, a position we reject, it is incumbent upon us to require some affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation.[33]

We recognize the importance of maintaining the secrecy of grand jury proceedings, and acknowledge the "necessarily broad" scope of Rule 6(e). *See Fund for Constitutional Government*, 656 F.2d at 869. It may turn out, in this case, that most, or even all, of the material withheld pursuant to exemption (b)(3) cannot be disclosed without compromising the secrecy of a grand jury's deliberations. We hold only that the defendants have not yet supplied the information a court must have in order to intelligently make that judgment.

B. *Exemption (b)(5): Deliberative Process and Attorney Work Product Privileges*

■ The DOJ withheld a number of documents, or portions thereof, pursuant to the statutory exemption for "memorandums or letters which would not be available by law to a party other than the agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (1982). The DOJ claimed generally that the documents expressed "candid and confidential legal policy advice

... subject to the attorney work product privilege, as well as being part of the Department's pre-decisional deliberative process."[34] A typical entry in the DOJ's index to its withheld documents reads:

Memo dated 8–20–80 from Stephen Clark, Attorney, CRT, to Charles Wellford, Deputy Administrator, Federal Justice Research Program. (2 pages). RE: Report on status of Cerro Maravilla case.... [C]andid discussion and recommendation as to strategy is deleted to protect the intra-agency deliberative process and attorney work-product.[35]

The district court held that the DOJ provided sufficient justification for its deliberative process/attorney work product exemption decisions insofar as the Department set out "each document being withheld, why it is being withheld[,] and the nature of the document to the extent feasible without revealing any details regarding the privileged contents of the document."[36] We disagree with this assessment; if the DOJ continues to resist disclosure of these documents after remand of this action, it must supply additional information so that a reviewing court can sensibly determine whether each invocation of deliberative process privilege or work product shield is properly grounded.

■ We begin with two fundamentals. First, Congress intended to confine exemption (b)(5) "as narrowly as [is] consistent with efficient Government operation." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980) (quoting S. Rep. No. 813, 89th Cong., 1st Sess. at 9 (1965)). Second, documents cov-

---

32. Index of Documents Withheld, J.A. at 78.

33. The district court also found that "the documents requested by plaintiff were not created for an independent purpose as [were] the documents in *Dresser* ... but were compiled from an investigation culminating in and used in a grand jury proceeding." Memorandum Opinion, C.A. No. 84–1829 at 6 (D.D.C. Feb. 7, 1986), J.A. at 114. Since the DOJ has not provided any information concerning these exhibits save that quoted *supra* in the text at note 32, we are at a loss to know how the district court determined the "purpose[s]" for which these documents were prepared.

34. Declaration of Nelson D. Hermilla, Chief, FOIA Branch, Civil Rights Division (DOJ) ¶ 10 (July 22, 1985), J.A. at 64.

35. *Id.*, Exhibit C, Document No. C–29. An appendix to this opinion contains the complete entries in the government's Index of Documents pertaining to its (b)(5) exemption claims.

36. Memorandum Opinion, C.A. No. 84–1829, at 7 (D.D.C. Feb. 7, 1986), J.A. at 115.

ered by either the attorney work product doctrine or the "deliberative process" privilege are unquestionably exempt from FOIA disclosure. *See id.; NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–55, 95 S.Ct. 1504, 1516–19, 44 L.Ed.2d 29 (1975). We have repeatedly underscored, however, that the agency invoking a FOIA exemption bears the burden of "establish[ing] [its] right to withhold evidence from the public." *Coastal States*, 617 F.2d at 861. We have simultaneously cautioned that "conclusory assertions of privilege will not suffice to carry" the agency's burden. *Id.; see Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 258 (D.C.Cir. 1977) (government must show "by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA"); *see also Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir.1980) (in light of the "overwhelming thrust of FOIA ... toward complete disclosure," exemption 5 claims must be supported with "specificity and [in] detail").

 We do not endeavor an encompassing definition of "conclusory assertion"; for present purposes, it is enough to observe that where no factual support is provided for an *essential* element of the claimed privilege or shield, the label "conclusory" is surely apt. The information provided by the DOJ—consisting almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter [37]—will not do.

 We have previously identified two prerequisites to the assertion of the deliberative process privilege:

In deciding whether a document should be protected by the privilege we look to

whether the document is "predecisional" —whether it was generated *before* the adoption of an agency policy—and whether the document is "deliberative"— whether it reflects the give-and-take of the consultative process.

*Coastal States*, 617 F.2d at 866; *accord Jordan*, 591 F.2d at 774; *Paisley v. CIA*, 712 F.2d 686, 698 (D.C.Cir.1981), *vacated in part on other grounds*, 724 F.2d 201 (D.C.Cir.1984); *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C.Cir.1982). A document is "predecisional" if it precedes, in temporal sequence, the "decision" to which it relates. Accordingly, to approve exemption of a document as predecisional, a court must be able "to pinpoint an agency decision or policy to which the document contributed." *Paisley*, 712 F.2d at 698. We search in vain through the supporting material submitted by the DOJ for any identification of the specific final decisions to which the advice or recommendations contained in the withheld documents contributed; absent that, we are not positioned to pass upon the applicability *vel non* of this privilege.[38]

The failure to specify the relevant final decision constitutes a sufficient ground for remanding this aspect of the case to the district court. We remind the DOJ, however, that it must do more if it chooses to renew predecisional characterizations as a basis for exempting documents from FOIA's disclosure rule. Predecisional communications "are not exempt merely because they are predecisional; they must also be a part of the agency give-and-take ... by which the decision itself is made." *Vaughn*, 523 F.2d at 1144. The agency must establish "what deliberative process is involved, and the role played by the

---

37. *See* Appendix.

38. We are mindful that the process leading to a decision to initiate, or to forego, prosecution is squarely within the scope of this privilege; as a judge of our district court has observed: "Exemption [5] is tailor-made for the situation in which [a prosecutor's office is] assessing the evidence it [is] compiling. To expose this process to public scrutiny would unnecessarily inhibit the prosecutor in the exercise of his traditionally broad discretion to assess the case and

decide whether or not to file charges." *Fund for Constitutional Government v. Nat'l Archives & Records Service*, 485 F.Supp. 1, 13 (D.D.C.1978), *aff'd in part and rev'd in part on other grounds*, 656 F.2d 856 (D.C.Cir.1981); *accord Paisley v. CIA*, 712 F.2d 686, 699 (D.C.Cir.1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C.Cir. 1984). Nonetheless, it remains the DOJ's burden to demonstrate that the documents it seeks to withhold were in fact part of that predecisional process.

documents in issue in the course of that process." *Coastal States*, 617 F.2d at 868.

We are cognizant that general guidelines are of limited utility in this area, for "the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." *Id.* at 867. Our case law, however, identifies two factors that can assist the court in determining whether this privilege is available: the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document," *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 678 (D.C.Cir.1981), and the relative positions in the agency's "chain of command" occupied by the document's author and recipient. *Andersen*, 679 F.2d at 258; *see also Schlefer v. United States*, 702 F.2d 233, 238 (D.C.Cir.1983) (intra-agency memoranda from "subordinate" to "superior" more likely to be deliberative in character than documents traveling in opposite direction); *Bristol-Myers Co. v. FTC*, 598 F.2d 18, 28 n. 20 (D.C.Cir.1978) ("[D]etailed information about the agency's decision-making process is essential ... to a fair determination of the agency's [deliberative process] claims."). It does not appear from the current record that the DOJ has adverted with care to the case law we have here recalled.

The information provided by the DOJ with respect to its attorney work-product claims is similarly inadequate. Here again, the claims have surface plausibility; internal memoranda concerning the status of a criminal investigation, prepared by DOJ attorneys in the course of their law enforcement duties, are surely the kind of documents commonly sheltered by the work product doctrine. But here too, a critical element of the DOJ's entitlement to the

claimed shield awaits proof. The work product doctrine "does not extend to every written document generated by an attorney," *Jordan*, 591 F.2d at 775; rather, work product covers only documents prepared "in contemplation of litigation." *Sears*, 421 U.S. at 154, 95 S.Ct. at 1518; *Coastal States*, 617 F.2d at 864; *Bristol-Myers*, 598 F.2d at 28–29; *see also* FED.R. CIV.P. 26(b)(3) (documents "prepared in anticipation of litigation or for trial" are discoverable only upon a showing of "substantial need").

By affidavit, the DOJ asserted that the withheld documents "were prepared by Civil Rights Division attorneys in anticipation of litigation."[39] We find no other reference in the DOJ's submissions to this essential element of its work product claim. We need not here decide whether so bare an assertion could ever suffice to carry the agency's burden, for the facts of this case raise enough questions as to its accuracy to render it insufficient as a matter of law.

In particular, we note that the DOJ investigation into the Cerro Maravilla incident was closed officially on April 16, 1980,[40] and did not reopen until August 1983; absent *any* additional support, we are reluctant to credit a claim that documents generated while there was no active investigation underway[41] were prepared "in anticipation of litigation."[42] The mere fact that the memoranda deal with the Cerro Maravilla incident, which was to be the focus of a later criminal proceeding, does not establish "that there was even the dimmest expectation of litigation *when these documents were drafted.*" *Coastal States*, 617 F.2d at 865 (emphasis added). While it may be true that the prospect of

---

**39.** Hermilla Declaration, *supra* note 34, ¶ 9 at 6, J.A. at 64.

**40.** *See supra* p. 578.

**41.** *See, e.g.,* Appendix documents C–27, C–28, C–29, C–30, C–31, and C–35.

**42.** We do not mean to suggest that documents prepared while no active investigations were underway are necessarily unprotected by the work-product doctrine; the testing question is "whether, in light of the nature of the document

and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024 at 198 (1970). The presence, or, as in this case, the absence of an ongoing investigation is but one aspect of the relevant "factual situation" a court must consider in evaluating an agency's work-product claim.

future litigation touches virtually any object of a DOJ attorney's attention, if the agency were allowed "to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated." *Id.*

We conclude, therefore, "not that the documents are not exempt as a matter of law, but that the agency has failed to supply us with even the minimal information necessary to make a determination." *Coastal States,* 617 F.2d at 861. We appreciate the difficult task confronting district court judges facing inherently fact-dependent exemption (5) claims, and the necessarily limited role proclamations from appellate courts can play in this process. Our decision in *Mead Data* remains perhaps the best general guide to both the detail agencies must provide to support exemption (5) claims and, correlatively, the level of scrutiny appropriate in court evaluation of those claims.

In reviewing the Air Force's assertion of the attorney-client privilege in *Mead Data,* we found adequate evidence "that the information ... was communicated to or by an attorney as part of a professional relationship," 566 F.2d at 253; however, the material submitted by the Air Force either gave "no indication as to the *confidentiality* of the information on which [the documents were] based," *id.* at 253–54 (emphasis added), a factor essential to the existence of the privilege, or supported a contrary inference that "at least part of [the document's] information base was *not* confidential." *Id.* at 255 (emphasis added). Similarly, with respect to the Air Force's "deliberative process" claim, the court examined each document's position within the agency's decision making process. Documents shown to contain "evaluations, opinions, and recommendations [constituting] the raw materials which went into the decision" in question—whether to contract with West Publishing Company regarding a computerized legal research system, *id.* at 248—were protected from disclosure. *Id.* at 257. On the other hand, a document merely summarizing the offers and counteroffers made by each side during negotiations was not considered reflective of the agency's deliberative process and could be disclosed consistent with the policy of "encouraging the free exchange of ideas among administrative personnel." *Id.*

FOIA enunciates a "general philosophy of full agency disclosure," *Jordan,* 591 F.2d at 755, and therefore requires attentive judicial review of agency exemption claims. The review obligation FOIA imposes upon courts requires us to demand more detailed information than the DOJ has submitted in this case. Faithful implementation of the statute "add[s] significantly to the resource costs an agency"—and, we might add, reviewing courts—"must bear if [the agency] chooses not to disclos[e] material." *Mead Data,* 566 F.2d at 261. The costs must be borne, however, if the congressional policy embodied in FOIA is to be well served.

*C. Exemption (b)(7)(C): Unwarranted Invasions of Personal Privacy*

Exemption (b)(7)(C) permits an agency to withhold "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Faced with a claim that this exemption applies to withheld material, the district court must "balanc[e] the privacy interest at stake against the public interest in disclosure." *Lesar v. Department of Justice,* 636 F.2d 472, 486 (D.C.Cir.1980); *accord Stern v. FBI,* 737 F.2d 84, 91 (D.C. Cir.1984); *Department of the Air Force v. Rose,* 425 U.S. 352, 370–73, 96 S.Ct. 1592, 1603–04, 48 L.Ed.2d 11 (1976). The (7)(C) exemption is notable in this regard. As to other exemptions, "Congress has struck the balance and the duty of the court is limited to finding whether the material is within the defined category." *Lesar,* 636 F.2d at 486 n. 80. Exemption (7)(C)'s balance is not similarly "tilted emphatically in favor of disclosure." *Bast v. Department of Justice,* 665 F.2d 1251, 1254 (D.C.Cir. 1981).

The information withheld by defendants under this heading consisted primarily of the names and other identifying information pertaining to "individuals [who] were the subjects of a Civil Rights Division investigation, potential defendants in civil rights prosecutions, or witnesses who voluntarily assisted the FBI and the Civil Rights Division by providing information pertinent to the investigation." [43] In addition, the DOJ withheld identification of the translator at the grand jury proceedings, as well as several FBI agents participating in the Cerro Maravilla investigations.[44]

■ We find no error in the district court's decision to uphold these exemption claims in their entirety. The privacy interests at stake here are indeed substantial. There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm. *See Fund for Constitutional Government*, 656 F.2d at 863–65 (revelation that an individual was investigation subject represents a "significant intrusion" on privacy); *Baez v. Department of Justice*, 647 F.2d 1328, 1338 (D.C. Cir.1980) (quoting with approval from an FBI agent's affidavit that "[t]here can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of an FBI investigation"). Other persons involved in the investigation—witnesses, informants, and the investigating agents—also have a substantial interest in seeing that their participation remains secret. *See Lesar*, 636 F.2d at 488 ("Those cooperating with law enforcement should not now pay the price of full disclosure of personal detail."); *id.* at 487–88 (recognizing FBI agents' claims to privacy in matters related to official duties); *Bast*, 665 F.2d at 1254 ((7)(C) exemption recognizes the "stigma potentially associated with law enforcement investigations and affords

broad[ ] privacy rights to suspects, witnesses, and investigators"). And while the Senate of Puerto Rico professes disbelief that the grand jury translator would be "personally embarrassed by the mere disclosure of his identity," [45] we think it clear that any individual with personal knowledge of the testimony heard by the grand jury could suffer harassment were that fact disclosed.

On the other side of the scale, the Senate points to the "paramount public interest ... in uncovering all the true facts, and the identities of all the relevant actors, concerning Cerro Maravilla." [46] We do not question the importance of the Senate's investigation; the fact remains, however, that the Senate has not adequately supported its "public interest" claim with respect to the *specific* information being withheld. The district court, evaluating the DOJ's (7)(C) claims, must "weigh[ ] the specific privacy invasion against the value of disclosing a given document." *Bast*, 665 F.2d at 1254, *citing Common Cause v. National Archives and Records Service*, 628 F.2d 179, 184 (D.C.Cir.1980). In face of the legitimate and substantial privacy interests implicated here, the Senate could point to little more than its general interest in "getting to the bottom" of the Cerro Maravilla affair. We will not disturb the district court's holding that this interest is not "in itself sufficient" [47] to outweigh the privacy concerns previously identified.

## IV.

FOIA specifically provides that the district court "may examine the contents of [withheld] agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the [statutory] exemptions." 5 U.S.C. § 552(a)(4)(B) (1982). A court's *in camera* resolution of any issue, however, runs counter to the fundamental principles on which our adversary system is based; we therefore have cautioned on numerous oc-

---

43. Hermilla Declaration, *supra* note 34, at 9, J.A. at 67.

44. Index of Documents Withheld, J.A. at 78–88.

45. Brief for Appellant at 30–31.

46. *Id.* at 30.

47. Memorandum Opinion, C.A. No. 84–1829 at 10 (D.D.C. Feb. 7, 1986), J.A. at 118.

casions that this course should be taken "only where it is unavoidable." *Crooker v. Bureau of Alcohol, Tobacco and Firearms,* 789 F.2d 64, 67 (D.C.Cir.1986); *see also Abourezk v. Reagan,* 785 F.2d 1043, 1060–61 (D.C.Cir.) (noting the "firmly held main rule" that courts not dispose of actions on the basis of *ex parte in camera* submissions and our "vigilan[ce] [in] confin[ing] to a narrow path submissions not in accord with our general mode of open proceedings"), *cert. granted,* —— U.S. ——, 107 S.Ct. 666, 93 L.Ed.2d 718 (1986); *Center for Auto Safety v. EPA,* 731 F.2d 16, 21 (D.C.Cir.1984) (5 U.S.C. § 552(a)(4)(B) should be invoked only "when the issue before the District Court could not be otherwise resolved").

The DOJ's original (7)(A) exemption claim became moot when the prosecution in the federal district court in Puerto Rico terminated. *See supra* pp. 579–581. The DOJ thereafter revived this exemption claim to keep from public view material that "relates not only to the Cerro Maravilla investigation which is no longer pending, but also to a continuing investigation being conducted in San Juan, Puerto Rico [involving] pending and prospective criminal enforcement proceedings against third parties." [48] No more particularized information regarding these documents could be provided, in the DOJ's view; even the minimum required to allow the district court to evaluate the validity of the exemption claim would "in itself reveal much of the information on the scope, nature, direction, and status of the ongoing investigation which [exemption] (b)(7)(A) is designed to protect." [49] Accordingly, the district court felt it had "no choice" [50] but to order the material turned over for *in camera* inspection. After examining the documents *in camera,* the district judge declared himself "satisfied … that Exemption 7(A) of [FOIA] has properly been invoked in this case," [51] and

stated that he could not "further describe [his] reasons" for so concluding. [52]

 Review of decisions based upon *in camera* examinations is difficult in the best of circumstances, but here those difficulties prove insurmountable. We do not quarrel with the district court's decision to order that examination, in light of the sworn declarations submitted by the DOJ. However, having ourselves examined the documents at issue, we are unable to discern if, how, or why the district court determined that no "reasonably segregable portion[s]," 5 U.S.C. § 552(b)(9), of this material could be disclosed. It is also unclear why the district court felt constrained to deny the Senate even a summary explanation of the basis for the court's ruling. In short, there is simply not enough in the way of a "decision" here to enable the panel to exercise this court's review function. We must therefore remand the district court's order of March 26, 1986 for a more complete accounting of the ruling contained therein.

### CONCLUSION

To recapitulate, we hold that the district court did not abuse its discretion in permitting the DOJ to press additional FOIA exemptions after its original, all-encompassing (7)(A) exemption claim became moot. With respect to the exemption claims subsequently featured, the DOJ sustained its burden of justification only with respect to the material withheld under exemption (7)(C). We therefore vacate the district court's grant of summary judgment in favor of the DOJ on the applicability of exemptions (b)(3), (b)(5), and (b)(7)(A) to the withheld material, and remand these portions of the case for proceedings consistent with this opinion.

*It is so ordered.*

---

**48.** Chester Declaration, *supra* note 16, at 2, J.A. at 124.

**49.** *Id.* at 4, J.A. at 126.

**50.** Order, C.A. No. 84–1829 at 2 (D.D.C. Mar. 14, 1986), J.A. at 129.

**51.** Order, C.A. No. 84–1829 at 2 (D.D.C. Mar. 26, 1986), J.A. at 132.

**52.** *Id.*

## APPENDIX

The following reproduces in their entirety all entries in the DOJ's Index of Withheld Documents referring to FOIA exemption (b)(5), 5 U.S.C. § 552(b)(5).

| DOCUMENT | DELETION | EXEMPTION |
|---|---|---|
| C–9 Memo dated 12–18–78 from Ralph Martin, Attorney, CRT to William Gardner, (former) Chief, Criminal Section, CRT (4 pages) RE: Summary of case | One phrase of predecisional deliberative material and attorney work product on page 1, a paragraph containing attorney work product and the candid views and discussion is deleted from page 2. Material containing strategy and predeliberative thought processes is deleted on pages 3 and 4. Information concerning matters occurring before the Grand Jury is deleted on pages 1, 3, and 4 to protect the secrecy of the Grand Jury process. | (B)(5)<br><br><br><br><br><br>(B)(3) and [FED.R.CRIM.P. 6(e)] |
| C–15 Memo dated 1–9–80 from Drew S. Days, III, (former) Deputy Attorney General AAG–CRT to the Acting Deputy Attorney General (DAG). (3 pages) RE: Summary of Cerro Maravilla case | Information pertaining to matters occurring before the Grand Jury and sentences discussing the strategy of developing the case to protect the secrecy of the Grand Jury process and protect attorney work-product paragraphs 4 and 5 on page 2. | (B)(3) [FED.R.CRIM.P. 6(e)], (B)(5) |
| C–17 Memo dated 1–31–80 from Ralph Martin, Attorney, CRT to Daniel Rinzel, (former) Chief, Criminal Section, CRT. (9 pages) RE: Summary of status of Cerro Maravilla case | Information pertaining to Grand Jury testimony is deleted on pages 1, 2, 4, 5, 6, 7, 8 and 9 to protect the secrecy of the Grand Jury case.<br>Information pertaining to pre-decisional and deliberative and strategies are deleted on pages 1, 2, 4, 5, 7, 8, and 9 to protect the deliberative process and attorney work-product. | (B)(3) [FED.R.CRIM.P. 6(e)], (B)(5) |
| C–23 Memo dated 4–10–80 from Stephen Clark, Attorney, CRT to the File. (1 page) RE: Telephone conversation | Information pertaining to the strategy of the investigation and preparation for litigation is deleted to protect attorney work-product. | (B)(5) |
| C–24 Memo dated 4–10–80 from Daniel Rinzel, (former) AAG–CRT. (2 pages) RE: Proposed closing and press release | Information pertaining to pre-decisional advice and recommendations is deleted to protect the deliberative process (on page 2). | (B)(5) |
| C–27 Memo dated 8–5–80 from Sudie (Hooper) to Daniel Rinzel, (former) Chief, Criminal Section CRT. (2 pages) RE: News articles. | Information pertaining to matters occurring before the Grand Jury and the development of a trial strategy are deleted to protect the secrecy of the Grand Jury process and to protect attorney work-product. | (B)(3) [FED.R.CRIM.P. 6(e)], (B)(5) |
| C–28 Memo dated 8–19–80 from Stephen Clark, Attorney, CRT, to the File. (1 page) RE: Telephone conversation | Information pertaining to the preparation of information and matters for litigation is deleted as attorney work-product. | (B)(5) |
| C–29 Memo dated 8–20–80 from Stephen Clark, Attorney, CRT, to Charles Wellford, Deputy Administrator, Federal Justice Research Program. (2 pages) RE: Report on status of Cerro Maravilla case. | Information pertaining to the testimony of a Grand Jury witness is deleted on page 1, paragraph 2 to protect the secrecy of the Grand Jury process and candid discussion and recommendation as to strategy is deleted to protect the intra-agency deliberative process and attorney work-product. | (B)(3) [FED.R.CRIM.P. 6(e)], (B)(5) |
| C–30 Memo dated 9–12–80 from Daniel Rinzel, (former) Chief, Criminal Section, CRT to James P. Turner, Deputy Assistant Attorney, Attorney General (DAAG), CRT. (2 pages) RE: Additional investigation | Information pertaining to Grand Jury testimony is deleted on page 1, paragraph 4 which extends to page 2 to protect the secrecy of the Grand Jury process. | (B)(3) [FED.R.CRIM.P. 6(e)] |

| DOCUMENT | DELETION | EXEMPTION |
|---|---|---|
| | Material in paragraphs 2 and 3 of page 1 and paragraph 1 of page 2 is deleted that contains information prepared in anticipation of litigation and opinions in regard to preparing a trial strategy. | (B)(5) |
| C–33 Memo dated 9–30–80 from Stephen Clark, Attorney, CRT to the File. (1 page) RE: Telephone conversation | Information gathered in preparation for trial and discussion of litigation strategy is deleted to protect attorney work-product. | (B)(5) |
| C–35 Memo dated 10–9–80 from Drew S. Days, III, (former) AAG–CRT to the DAG. (2 pages) RE: | Information pertaining to witnesses appearing before the Grand Jury is deleted on pages 1 and 2 to protect the secrecy of the Grand Jury. The analysis and discussion is deleted as attorney work-product and pre-decisional deliberative discussions. | (B)(3) [FED.R.CRIM.P. 6(e)], (B)(5) |