The **WILDERNESS SOCIETY**,
Plaintiff,

v.

**UNITED STATES DEPARTMENT
OF THE INTERIOR, et al.,**
Defendants.

**No. CIV.A.03–1801 (RBW).**

United States District Court,
District of Columbia.

Oct. 8, 2004.

James Stuart Angell, Edward B. Zukoski, Denver, CO, for Plaintiff.

Alan Burch, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

WALTON, District Judge.

The plaintiff has filed this lawsuit alleging that the defendants impermissibly withheld documents, which were requested pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000). The defendants contend, however, that their affidavits and corresponding *Vaughn* index adequately explain that the documents that were not provided to the plaintiff were exempt from disclosure under Exemption 5 of the FOIA. *See* 5 U.S.C. § 552(b)(5). Currently before the Court are the parties' cross-motions for summary judgment, specifically the plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") and its Memorandum in Support of Its Motion for Summary Judgment ("Pl.'s Mem.") and the defendants' Motion for Summary Judgment ("Defs.' Mot.") and Defendants' Memorandum in Support of their Motion for Summary Judgment ("Defs.' Mem."). For the reasons set forth below, the plaintiff's motion for summary judgment is granted in part and denied in part and the defendants' motion for summary judgment is denied.

### I. Background

Through the Wilderness Act of 1964, Congress made it a priority to "secure for the American people of present and future generations the benefits of an enduring resource of wilderness." 16 U.S.C.

§ 1131(a) (2000). To accomplish this objective, Congress directed the Department of the Interior ("DOI") to review national forest, national park and national wildlife refuge lands to see which of these lands could qualify for wilderness designation.[1] 16 U.S.C. § 1132(c). In order to qualify for wilderness designation, an area must be "undeveloped Federal Land retaining its primeval character and influence, without permanent improvements or human habitation, which is protected and managed so as to preserve its natural conditions . . . ." 16 U.S.C. § 1131(c). In 1976, Congress broadened the scope of the Wilderness Act's inventory requirements through the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701–1784 (2000). The FLPMA, which was enacted in 1976, required the Bureau of Land Management ("BLM") to inventory all land under its jurisdiction "[w]ithin fifteen years" to determine what areas are suitable or not suitable "for preservation as wilderness." 43 U.S.C. § 1782(a). Upon being advised by the Secretary of the DOI of lands that qualify as wilderness areas, the President is required to recommend to Congress which areas should be so designated. *Id.* §§ 1782(a)-(b). Pending Congressional action on whether the recommended areas should receive wilder-

ness designations, the BLM is required to manage these inventoried areas as Wilderness Study Areas ("WSA's") "so as not to impair the suitability of such areas for preservation as wilderness" pursuant to the Wilderness Act, 16 U.S.C. § 1131. 43 U.S.C. § 1782(c).

In 1996, the Secretary of the DOI ordered the BLM to re-inventory portions of its Utah lands in response to claims that the agency's initial inventory had overlooked a significant amount of wilderness quality land. Complaint for Declaratory and Injunctive Relief ("Compl.") ¶ 19. In response, the State of Utah filed a lawsuit to prevent this re-inventory from taking place. *Id.* On appeal, the United States Court of Appeals for the Tenth Circuit dismissed all but one of the State's claims due to lack of standing. *See State of Utah v. Babbitt,* 137 F.3d 1193, 1210 (10th Cir. 1998);[2] Compl. ¶ 19. In light of the ruling by the Tenth Circuit, the "BLM proceeded with its wilderness re-inventory and ultimately concluded it had overlooked 2.8 million acres of wilderness quality lands in Utah." *Id.* ¶ 19.

On March 25, 2003, The Wilderness Society ("TWS") filed its initial FOIA request with the DOI seeking documents relating to the re-inventory of Utah land.[3] *Id.* ¶ 21.

---

1. Under 16 U.S.C. § 1131(a), Congress created the "National Wilderness Preservation System to be composed of federally owned areas designated by Congress as 'wilderness areas', [which] shall be administered for the use and enjoyment of the American people.'" *Id.*

2. The only claim which the Tenth Circuit did not dismiss centered on the State's argument that the DOI had imposed "a de facto wilderness management standard on non-[Wilderness Study Area] federal lands" in Utah. *Babbitt,* 137 F.3d at 1215–16.

3. TWS's initial March 25, 2003 FOIA request requested:
 (1) ALL memoranda, testimony, reports, opinions, correspondence or other records

received by the DOI from members of Congress or their staff, State or local government officials, trade associations, industry groups, and individuals concerning: DOI policy, guidance, regulations for, or management of, designated, proposed, reviewed, recommended, potential, or study wilderness areas or other lands subject to wilderness review or assessment under the jurisdiction of the DOI, and; BLM's Handbook (H–6310–1); "Wilderness Inventory and Study Procedures"; (2) ALL memoranda, testimony, reports, opinions, correspondence or other records developed, written, submitted, received or compiled in response to the documents outlined above at (1); (3) Any other memoranda, testimony,

This request was subsequently narrowed to include only correspondence with officials concerning "wilderness review issues"[4] on file with the National Park Service, the United States Fish & Wildlife Service, the Bureau of Land Management, all BLM offices in the State of Utah, and the Office of the Secretary of the DOI.[5] *Id.* ¶ 27 At the end of March 2003, the State of Utah filed a third amended complaint in its long-standing lawsuit against the BLM. Shortly after the filing of this amended complaint, on April 11, 2003, the parties settled the case. *Id.* ¶ 23. Following the settlement, TWS submitted a second FOIA request to the DOI in which it sought copies of "all records related to the Utah settlement agreement."[6] *Id.* ¶ 24.

In this same request, TWS updated its initial March 25, 2003 FOIA request seeking "any responsive documents that had been received or created by the agency in the three weeks between the original FOIA request and the approval of the Utah settlement." *Id.*

On April 14, 2003, TWS received forty-one documents totaling 311 pages in response to its first request under the FOIA. *Id.* ¶ 28; Pl.'s Ex. 7 at 2–3. In response to its second request, TWS received, on April 30, 2003, an additional four documents totaling twelve pages. Pl.'s Ex. 9 at 2; Compl. ¶ 30.[7] Finally, on May 2, 2003, TWS received another 177 pages of documents, which the DOI contends were responsive to the second request. Pl.'s Ex.

---

reports, opinions, correspondence or other records developed, modified or acquired by DOI relating to DOI policy, guidance, regulations for, or management of, designated, proposed, reviewed, recommended, potential, or study wilderness areas or other lands subject to wilderness review under the jurisdiction of the DOI; or BLM's Handbook (H–6310–1), "Wilderness Inventory and Study Procedures."
Plaintiff's Exhibit 1 ("Pl.'s Ex. 1") at 2.

4. Wilderness review issues include "DOI policy, guidance, regulations for or management of; designated, proposed, reviewed, recommended, potential, or study wilderness areas or other lands subject to wilderness review or assessment under the jurisdiction of the DOI, and [b] BLM's Handbook (H–6310–1), 'Wilderness Inventory Study Procedures.' " Exhibit to Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("Pl.'s Ex.") 7 at 2.

5. TWS's revised March 25, 2003 FOIA request sought:
(1) "[a]ll controlled correspondence to elected, appointed, and career officials, and from election [sic] appointed and career officials, since January 20, 2001, concerning 'wilderness review issues' ... on file in headquarters office of the National Park Service, the U.S. Fish & Wildlife Service, the Bureau of Land Management, all BLM

offices I[sic] the State of Utah, and the Office of the Secretary" and (2)"[a]ll documents, excluding email messages, since January 20, 2001 developed, written, submitted, received or compiled in response to the documents outlined in 1., above, on file in the Office of the Secretary and in all Alaska office[sic] of the NPS, FWS and BLM."
Compl. ¶ 27; *see also* Pl.'s Ex. 1 at 2–3.

6. TWS's April 14, 2003 FOIA request sought copies of the following:
(1) all records meeting the criteria of [previously submitted] FOIA request OS–2003–00534, as modified, generated, modified, or acquired by the Department of Interior ("DOI") in the interim between March 25, 2003 and the present, and (2) all records generated, modified or acquired by the Department of the Interior ("DOI") related to the proposed settlement agreement in the above mentioned matter of *State of Utah v. Norton.*
Plaintiff's Statement of Facts in Support of its Motion for Summary Judgment ("Pl.'s Facts") ¶ 12; *see also* Pl.'s Ex. 2 at 1–2.

7. The plaintiff's Complaint indicates that there were eleven pages of documents in this "installment." Compl. ¶ 30. However, the plaintiff's Exhibit 9 indicates that there were twelve pages. Pl.'s Ex. 9 at 2.

10; Compl. ¶ 31.[8] The DOI claims that all the remaining documents which are responsive to either of TWS' FOIA requests are exempt from disclosure pursuant to FOIA Exemption 5.

On August 26, 2003, the plaintiff filed this lawsuit in this Court seeking injunctive and declaratory relief and an order compelling the defendants to provide to them all documents responsive to their FOIA requests. Compl. at 10 (prayer for relief). On December 19, 2003, the DOI filed with this Court and served on the plaintiff an index pursuant to *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C.Cir.1973), which provided the agency's justifications for withholding some or all of nearly 200 separately numbered documents. On January 23, 2004, the DOI filed an amended *Vaughn* index providing explanations for withholding an additional forty-four documents.

## II. *Standard of Review*

This Court will grant a motion for summary judgment under Rule 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). When ruling on a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party. *VoteHemp, Inc. v. Drug Enforcement Admin.*, 237 F.Supp.2d 55, 59 (D.D.C.2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). However, the non-moving party cannot rely on "mere allegations or denials ... but ... must set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted); *see also Fisher v. Nat'l Institutes of Health*, 934 F.Supp. 464, 467–68 (D.D.C.1996) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

## III. *The Parties' Arguments*

The plaintiff argues that the defendants impermissibly withheld documents subject to disclosure under its FOIA request. Pl.'s Mem. at 1. In support of its argument, the plaintiff points to the alleged inadequacy of the defendants' *Vaughn* index. *Id.* The plaintiff argues that the entries in the *Vaughn* index describing the withheld documents fail to satisfy any of the privileges claimed by the defendants under Exemption 5 of the FOIA. *Id.* Specifically, the plaintiff opines that the deliberative process privilege is inapplicable to the documents in dispute because the descriptions in the defendants' *Vaughn* index fail to show how the withheld documents relate to any policy deliberations within the DOI or how release of the materials would affect candid communication within the agency. *Id.* at 9–27. Furthermore, the plaintiff alleges that the documents withheld based on claims of the attorney-client and attorney work-product privileges cannot survive a motion for summary judgment because the entries in the *Vaughn* index for those documents fail to meet even the minimum requirements to establish that these privileges apply. *Id.* at 31–38. Moreover, the plaintiff contends that the defendants did not properly segregate factual material it is entitled to receive that is contained in the withheld documents, which violates the FOIA. *Id.* 27–31. Finally, TWS alleges that the defendants failed to conduct a reasonable

---

**8.** The plaintiff's Complaint indicates that there were 189 pages of documents in the May 2, 2003 "installment." Compl. ¶ 31. However, the plaintiff's Exhibit 10 indicates that there were 177 pages. Pl.'s Ex. 10 at 2.

search for responsive documents because it did not follow obvious leads for the discovery of such documents. *Id.* at 38–43.

The defendants contend that their affidavits and the *Vaughn* index sufficiently explain the reasons for withholding the documents requested by the plaintiff. Defs.' Mem. at 1. Moreover, the defendants contend that their withholding of documents pursuant to the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege of Exemption 5 was clearly appropriate and in accordance with the law of this Circuit. *Id.* Finally, contrary to the plaintiff's assertions, the defendants contend that they have sufficiently segregated factual material from the withheld documents, and that they conducted an adequate search for responsive documents. *Id.*

### IV. *Legal Analysis*

#### (A) Exemption 5 of the FOIA

Exemption 5 to the FOIA's disclosure requirements protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C.Cir.1980). "In other words, Exemption 5 incorporates 'all civil discovery rules'" into the exemption. *Defenders of Wildlife v. Dep't of Agriculture*, 311 F.Supp.2d 44, 57 (D.D.C.2004) (quoting *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1185 (D.C.Cir.1987)). Thus, courts have incorporated the following three traditional civil discovery privileges under Exemption 5:(1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege. *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Coastal States*, 617 F.2d at 862, 866. "Congress intended to confine exemption (b)(5) 'as

narrowly as [is] consistent with efficient Government operation.'" *Senate of the Commonwealth of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 584 (D.C.Cir.1987) (quoting *Coastal States*, 617 F.2d at 868).

The "'burden is on the agency' to show that the requested material falls within a FOIA exemption." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C.Cir.1992) (quoting 5 U.S.C. § 552(a)(4)(B)). In satisfying its burden, the agency may submit affidavits or declarations describing the withheld material in reasonable detail, thereby explaining why it falls within the stated FOIA exemption. *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C.Cir. 1998). Agencies typically submit a *Vaughn* index to satisfy this burden, which sets forth a description of each withheld document, the exemption claimed for withholding the document, and reasons supporting the application of the exemption to the withheld material. *Vaughn*, 484 F.2d at 827. This index must be sufficiently detailed to allow a court to determine whether the claimed exemptions apply to the withheld documents. *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C.Cir.1996). These statements by the agency "cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C.Cir.1987) (citations omitted). While the District of Columbia Circuit has not definitively defined what constitutes a conclusory statement, it has concluded that "where no factual support is provided for an *essential* element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Puerto Rico*, 823 F.2d at 585 (emphasis in original).

 To determine whether a court should grant summary judgment under the FOIA, the court must see if the undisputed material facts, as shown by exhibits, affidavits, and/or the *Vaughn* index, show (1) that the agency conducted a reasonable search for responsive records, and (2) that each document has been produced, is identifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C.Cir.2001); *Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C.Cir.1980). Therefore, the defendant agency has the burden of justifying the withholding of requested documents and demonstrating that it conducted a reasonable search for the requested information. *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C.Cir.1993) (citations omitted).

### 1. The Deliberative Process Privilege

 The defendants rely on the deliberative process privilege of Exemption 5 as the basis for withholding the majority of the documents requested by the plaintiff.[9] Defs.' Mem. at 1. The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (citing *Sears*, 421 U.S. at 150, 95 S.Ct. 1504) (internal quotation marks omitted). The purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public. *Defenders of Wildlife v. Dep't of Agric.*, 311 F.Supp.2d 44, 57 (D.D.C.2004) (citations omitted). Thus, when a court reviews whether an agency properly withheld documents under the deliberative process privilege, the critical question that must be answered is whether "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Institute v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1122 (D.C.Cir.1989); *see also Sears*, 421 U.S. at 151, 95 S.Ct. 1504 (noting that the main purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions").

 For materials to be exempt from disclosure under the deliberative process privilege, the agency must show that its decision is both (1) predecisional and (2) deliberative. *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C.Cir.2002). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp.*, 976 F.2d at 1434 (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)). Accordingly, the decision must be "[a]ntecedent to the adoption of agency policy." *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (1978). However, a document cannot be properly characterized as predecisional "if it is adopted, formally or

---

**9.** The defendants assert the deliberative process privilege for all but two of the withheld documents, Utah–1i and Utah–3g.

informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866. Examples of the type of documents that might qualify as predecisional are "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* A document is deliberative if the "the materials. ... bear on the formulation or exercise of agency policy-oriented *judgment.*" *Petroleum Info. Corp.*, 976 F.2d at 1435 (emphasis in original). The information must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975). Most importantly, the document must reflect the "give-and-take of the consultative process." *Puerto Rico*, 823 F.2d at 585. Other factors bear on whether a document is "deliberative." In determining whether the deliberative process privilege should apply to a particular document, courts often look at " 'the nature of the decision making authority vested in the officer or person issuing the disputed document,' and the relative positions in the agency's 'chain of command' occupied by the document's author and recipient." *Animal Legal Defense Fund, Inc. v. Dep't of the Air Force*, 44 F.Supp.2d 295, 301 (D.D.C.1999) (citations omitted). Although there are many cases in this Circuit which discuss the deliberative process privilege, these cases "are of limited help ... because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." *Coastal States*, 617 F.2d at 867. As discussed above, and repeatedly emphasized by the District of Columbia Circuit, " 'conclusory assertion of privilege will not suffice to carry' the agency's burden" of establishing

its right to withhold records. *Puerto Rico*, 823 F.2d at 585 (quoting *Coastal States*, 617 F.2d at 861). Here, the plaintiff raises a number of challenges to the defendants' assertion of privilege, and this Court will now address each in turn.

### (a) Have the Defendants Identified an Agency "Decision" Warranting the Application of Exemption 5?

The plaintiff argues that the defendants' withholdings and their amended *Vaughn* index fail to satisfy the requirements necessary to assert the deliberative process privilege. Pl.'s Mem. at 14–17. The plaintiff first contends that the defendants have failed to identify a particular decision to which the documents relate, but rather, *inter alia*, vaguely suggest in the *Vaughn* index that they relate to "wilderness issues," "wilderness review," "wilderness policy," and "wilderness matters," which the plaintiff argues makes it impossible to determine "to what decision-making process these descriptions refer." Pl.'s Mem. at 15–16. The defendants, however, allege that during the negotiations of the plaintiff's FOIA requests, the term "wilderness issues," which originated in the plaintiff's FOIA request, encompassed three principle deliberative processes: (1) the DOI's change to its wilderness policy (which refers to statutorily required designation of certain public lands) as reflected in its settlement with the State of Utah, (2) follow-up and implementation issues that arose in the immediate aftermath of the policy change, and (3) how to publicize the policy change. Defendants' Reply in Support of Their Motion for Summary Judgment ("Defs.' Reply") at 6. Thus, by their own admission, it is clear that use of the term "wilderness issues" referred to several different agency decisions and policies.

█ "[T]o approve exemption of a document as predecisional, a court must be able 'to pinpoint an agency decision or policy to which the document contributed.'" *Puerto Rico*, 823 F.2d at 585 (quoting *Paisley v. C.I.A.*, 712 F.2d 686, 698 (D.C.Cir.1983)). In *Puerto Rico*, the Commonwealth of Puerto Rico submitted a request under the FOIA seeking all documents relating to the killing of two Puerto Rican political activists. *Id.* at 577–79. The Department of Justice released some documents, but also withheld others under Exemption 5's deliberative process privilege. *Id.* at 585–86. Puerto Rico challenged the withholdings in court. On appeal, the District of Columbia Circuit concluded that the Department of Justice's *Vaughn* index was insufficient and conclusory. *Id.* at 585–86. The Circuit Court noted that a typical entry from the Department of Justice's index read as follows: "Memo dated 8–20–80 from Stephen Clark, Attorney, CRT to Charles Wellford, Deputy Administrator, Federal Justice Research Program (2 pages). RE: Report on status of Cerro Maravilla case ... [C]andid discussion and recommendation as to strategy is deleted to protect the intra-agency deliberative process ...." *Id.* at 584. The District of Columbia Circuit concluded that the entries, which consisted "almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter—will not do." *Id.* at 585. Thus, the Court found that the index was insufficient, because it was conclusory and failed to specify the relevant final decision to which the documents related. *Id.* at 585.

█ In the present case, the defendants index suffers from the same deficiencies. Typical entries in the defendants' *Vaughn* index read as follows:

Document Alaska–4j: **Document**: Undated, unsigned document bearing notation "attyclient to Comer," BLM Wilderness proposal (3 pages). Description: Document is a draft identifying various options on wilderness issues. It identifies various options, makes recommendations, assesses pros and cons, and raises questions ... **Basis for Withholding**: this is a predecisional draft that identifies, weights, and assesses various options open to the Department in dealing with Alaska wilderness issues. Document Utah–1t: **Document**: Undated and anonymous meeting agenda (three pages). **Description**: The document consists of an agenda for a meeting, date unknown. The agenda consists of two topics; 1) Wilderness issues under section 202 and 603 of FLPMA, and 2) RX 2477 issues. The third page consists of an options paper regarding WSA's and the WSA handbook. The first and third pages contain extensive handwritten notes.... **Basis for Withholding**: Document is predecisional and deals with options to address WSA's. It is also deliberative because options for future actions are the topic of discussion.

The defendants' own definition of "wilderness issues" does not specify any one agency decision, but rather three (and possible more) different agency decisions. While some of the documents may have been properly withheld under Exemption 5, this Court is unable to evaluate the agency's assessment because the *Vaughn* index clearly asserts in conclusory fashion the decision or policy to which the documents relate and that they were predecisional. Thus, since this Court cannot clearly identify an agency decision to which the advice, recommendations, thoughts and opinions contained in the withheld documents contributed, it must conclude that the defendants' *Vaughn* index is deficient. For the foregoing reasons, the plaintiff's motion for

summary judgment on this issue must be granted and the defendants' motion for summary judgment on this issue denied. Therefore, the defendants, within thirty days of the issuance of this memorandum opinion, must either release the challenged documents that contain such vague and conclusory references to an agency decision or properly substantiate in a supplemental *Vaughn* index their reasons for withholding the documents.[10]

**(b) Do Documents Created *After* the Agency Decision Need to be Produced?**

The plaintiff also contends that the defendants have failed to release documents that were created after agency decisions were made. Pl.'s Mem. at 17. The plaintiff submits that when the policy decision to eliminate BLM conducted wilderness inventories and the future designation of Wilderness Study Areas was made, the decision to settle the Utah lawsuit had already been made. *Id.* Therefore, according to the plaintiff, all documents dated after April 11, 2003 (the date of the settlement agreement between the DOI and the State of Utah), are postdecisional and not exempt under the deliberative process privilege. Pl.'s Mem. at 18. The defendants counter that certain postdecisional documents should be exempt, so as to avoid public confusion over the implementation of certain policy objectives. Defs.' Mem. at 11.

■ The Supreme Court has recognized that "[a]gencies are . . . engaged in a *continuing* process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions[.]" *Sears,*

421 U.S. at 153 n. 18, 95 S.Ct. 1504 (emphasis added). Therefore, the Court cautioned that "the lower courts should be wary of interfering with this process." *Id.* Thus, while "the deliberative process exemptions does not cover explanations of agency action, such as might be contained in press releases, . . . it does extend to recommendations and decisions concerning the sort of continuing and follow-up issues . . . ." *Judicial Watch, Inc. v. Reno,* No. CIV.A.00–0723, 2001 WL 1902811, at *3 (D.D.C. Mar.30, 2001) (internal citations omitted). As with all exemptions under the FOIA, it is the agency's burden to establish the exemption's applicability. *Petroleum Info. Corp.,* 976 F.2d at 1433. However, once an agency adopts a policy, "formally or informally," the contents of some documents, including draft documents, would destroy any predecisional aspect of drafts. *See Defenders of Wildlife v. Dep't of Agriculture,* 311 F.Supp.2d 44, 59 (D.D.C.2004) (citing *Coastal States,* 617 F.2d at 866).

■ Here, the plaintiff's argument must fail. The plaintiff argues that mere proximity in time of a document's creation, here, after the settlement, mandates its disclosure. However, as the Supreme Court made clear in *Sears,* while the agency may have made a final decision regarding a matter, "[a]gencies are . . . engaged in a continuing process of examining their policies . . . ." *Sears,* 421 U.S. at 153 n. 18, 95 S.Ct. 1504. Thus, post-decision draft documents which examine and make recommendations to an agency's policies can be withheld. Such later created documents are not necessarily rationalizing or supporting the agency decision, as they

---

10. According to plaintiff's exhibits 5 and 6, the plaintiff only challenges some of the documents for failing to identify an agency decision. Accordingly, of those documents challenged, only the following documents are covered by this ruling: Alaska Documents: 1j; 1r; 1c; 1u; 2a; 2g; 2j; 2p; 3b; 3e; 3f; 3k; 3o; 4j; and 4k Utah Documents: 1r; 1t; 1y; 1z; 2a; 2b; 2h; 4u; 4v; 7u; 9k; 9q; 11a; 11x.

may be evaluating it and making recommendations on it. Thus, because an agency has a valid right to review its policies and create documents to that end, the mere fact that a document was created in this case after the settlement agreement was reached does not mandate its disclosure as postdecisional.[11] Thus, the plaintiff's motion for summary judgment based solely on the ground that certain documents were created after the settlement decision was made must be denied.

### (c) Did the Defendants Properly Withhold "Draft" Documents?

■ The plaintiff also contends that the defendants' reliance on the term "draft" as automatic grounds for exempting documents from disclosure is misplaced. Pl.'s Mem. at 20. The District of Columbia Circuit has made clear that simply designating a document as a "draft" does not automatically make it privileged under the deliberative process privilege. *Arthur Andersen & Co. v. Internal Revenue Serv.*, 679 F.2d 254, 257 (D.C.Cir. 1982). ("The designation of … documents … as 'drafts' does not end the inquiry, however. *Coastal States* [, 617 F.2d at 866,] forecloses the … argument that any document identified as a 'draft' is per se exempt."). Thus, fact sheets and questions and answer sheets do not qualify as deliberative simply by labeling them as drafts. Accordingly, factual information which does not bear on the policy formulation is not subject to the deliberative process privilege. The defendants must, therefore, identify the "function and signif-

icance … in the agency's decision making process" of all redacted and withheld documents to qualify them as exempt under the deliberative process privilege. *Arthur Andersen*, 679 F.2d at 258. Furthermore, when identifying a document as a draft, the defendant must indicate whether the draft was "(1) 'adopted formally or informally, as the agency position on an issue;' or (2) 'used by the agency in its dealings with the public.'" *Judicial Watch v. United States Postal Serv.*, 297 F.Supp.2d 252, 261 (D.D.C.2004).

In this case, the defendants have not indicated whether its designated "draft" documents, many of which are public relations materials, have been formally or informally adopted or used in the agency's interactions with the public. Since either will defeat the deliberative process privilege, the defendants have failed to meet their burden of establishing that the documents were properly withheld.[12] For the foregoing reasons, this Court grants the plaintiff's motion for summary judgment on this issue. Accordingly, the Court orders the defendants, within thirty days of the issuance of this opinion, to either produce of the challenged documents or submit an amended *Vaughn* index that complies with the FOIA as elaborated in this opinion.

### (d) Can Unsigned, Undated, Unaddressed and Untitled Documents Stifle Candid Communication?

■ The plaintiff contends that for every document which is unsigned, undated,

---

11. The plaintiff also appears to argue that public relations materials, which do not relate to policy formulation, and were created after the settlement were improperly withheld. All of the documents that the plaintiff claims have been withheld in this regard are "draft" documents and whether they should be produced will be discussed in the next section.

12. Because the Court finds no entries in the defendants' *Vaughn* index where the defendants have indicated whether the "draft" document was adopted by the agency or used to interact with the public, it need not list the specific entries that are deficient since all the entries relating to "draft" documents appear to be deficient.

and unaddressed, the defendants have failed to demonstrate how release of such documents would encroach on the agency's ability to engage in candid or frank discussion, one of the underlying objectives of Exemption 5. *See, e.g., Times Journal Co. v. Dep't of Air Force,* 793 F.Supp. 1, 3 (D.D.C.1991). One relevant factor to be considered in determining whether the deliberative process privilege applies is the relation between the author and recipients of the document. *Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1195 (D.C.Cir. 1991); *Puerto Rico,* 823 F.2d at 586. As the United States Court of Appeals for the Fourth Circuit has noted:

> where the [*Vaughn* index] fails to identify either the author or its recipient, those persons' relationship to the decisionmaking process cannot be identified and it becomes difficult if not impossible, to perceive how the disclosure of such documents would result in a chilling effect upon the open and frank exchange of opinions within the agency.

*Ethyl Corp. v. U.S. E.P.A.,* 25 F.3d 1241, 1250 (4th Cir.1994). In this case, the defendants contend that they did not withhold the names of the authors of documents, they are simply unknown. There is certainly no *per se* rule that requires the release of documents solely because of the failure to list the names and titles of the author and recipient of documents. However, as the Fourth Circuit recognized, the failure to provide such information makes it more difficult for the defendants to satisfy their burden of providing sufficient detail to describe how the particular documents were part of the deliberative process. While specific identify-

ing information may be unavailable, the defendants have not explained why they could not provide more general information concerning the source of their origination or where the documents were located, *i.e.,* in the office of the General Counsel. Such information might provide relevant and informative information for this Court to assess in determining what role, if any, a document played in the decision-making process.

The defendants challenge fifty-one documents under this lack of document identification theory. Many of the entries that lack identifying information fail to satisfy the defendants' burden of establishing that the document was properly withheld under Exemption 5. As already discussed at length, to successfully assert Exemption 5, a defendant must show that a withheld document is both predecisional and deliberative. *National Ass'n of Home Builders,* 309 F.3d at 39. With regard to this test, courts frequently examine whether "the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States,* 617 F.2d at 866. However, in cases where there is no identifying information that would link an individual to a document, this potential is unlikely. Thus, such a document can only properly be withheld if the defendant can clearly demonstrate that the document is both predecisional and deliberative. Here, this Court concludes that, on the record before it, a determination cannot be made as to whether many of the entries challenged by the plaintiff satisfy this test.[13] Again, this

---

**13.** Throughout this opinion, this Court has concluded that many of the entries in defendants' *Vaughn* index are deficient for a variety of reasons. In fact, many of the challenged entries are deficient for more than one reason. Therefore, the defendants are now re-

quired to either produce the documents or address the disputed entries in an amended *Vaughn* index. Thus, because the Court will require that all of the entries be re-evaluated by the defendants and that this group of disputed entries, which comprises of documents

Court must therefore grant the plaintiff's motion for summary judgment on this issue and orders that within thirty days of the issuance of this opinion the defendants shall either produce the challenged documents or submit an amended *Vaughn* index that addresses the deficiencies set forth in this opinion.

### 2. The Attorney–Client Privilege

 The defendants invoke the attorney-client privilege as grounds for withholding eighteen documents requested by the plaintiff.[14] Plaintiff's Reply Memorandum in Support of its Motion for Summary Judgment ("Pl.'s Reply") at 17 n. 6. To invoke the attorney-client privilege, an agency must show that the withheld document "(1) involves 'confidential communications between an attorney and [his] client' and (2) relates to 'a legal matter for which the client has sought professional advice.'" *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F.Supp.2d at 267 (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C.Cir. 1977)). However, the attorney-client privilege does not give the agency the ability "to withhold a document merely because it is a communication between the agency and its lawyers." *Id.* The agency must show that the information provided by its lawyers was intended to be confidential and was not disclosed to any third party. *Id.* The plaintiff argues that the defendant has failed to show that these documents actually were created to provide legal ad-

vice or that they were intended to be confidential communications between the agency and the lawyers. Pl.'s Reply at 18–19. The defendants contend, however, that to invoke the privilege, the communication itself must be confidential, and this can be determined by looking at the context of the communication (as described in their *Vaughn* index) as opposed to stamping every document as confidential. Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment ("Def.'s Reply") at 7.

The District of Columbia Circuit has found that it is incumbent upon the agency invoking the attorney-client privilege to demonstrate "confidentiality both at the time of the communication and maintained since." *Coastal States*, 617 F.2d at 863. Moreover, the Circuit Court has concluded that the "the attorney-client privilege [must be] narrowly construed and is limited to those situations in which its purposes will be served." *Id.* at 862. This is because the attorney-client privilege "'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)).

 Here, the defendants have failed to satisfy their burden to show that the documents were properly withheld under the attorney-client privilege. For nearly

which do not identify the authors, either be released or an amended *Vaughn* indices be provided, this Court finds it unnecessary at this time to engage in an entry-by-entry review of the fifty-one challenged entries. Such a review would require a time consuming examination of the factual proffers of each entry, which the Court will defer until a decision is made about either the release of the documents or the submission of an amended *Vaughn* index. Obviously, however, this review will not have to be conducted if the

defendants decide to release all of the documents.

14. The defendants continue to withhold the following documents based upon the attorney-client privilege: Alaska–3e; Alaska 3–k; Alaska–3u Alaska 4–c; Alaska–4d; Alaska–4e; Alaska–4l; Alaska–4m; Alaska–4n; Utah–1g; Utah–1s; Utah–2z; Utah–3g; Utah–3j; Utah–3k; Utah–3l; Utah–3m; and Utah–1l.

all the documents withheld under the guise of the attorney-client privilege, the defendants have failed to provide critical information in their *Vaughn* index. Regarding four documents (Alaska–2i; Alaska–4g;[15] Utah–2z; and Utah–3g), the defendants fail to identify the author of the document and in some cases (Utah–2z and Utah–3g) do not even identify the recipient. This makes it impossible for the Court to determine if this is a communication between an attorney and a client, a necessary requirement to assert the attorney-client privilege. Furthermore, in only two entries does the defendant even use the word confidential in the description of why the document was withheld. *See* Utah–1i; Utah–1s. In fact, it is reasonable to infer that since the defendants only described the information contained in some of the documents as "confidential," that those entries which simply state that the communications were from an attorney without designating that the communications were confidential, indicates that those documents do not merit nondisclosure under the attorney-client privilege. Moreover, even regarding the two documents the defendants indicate contain confidential communications, the defendants do not represent that the confidential information contained in them "were circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'" *Coastal States,* 617 F.2d at 863 (citing *Mead Data,* 566 F.2d at 253 n. 24). For these several reasons, the Court is compelled to conclude that the defendants' *Vaughn* index does not establish that the documents are protected from disclosure by the attorney-client

privilege. Again, the defendants will have thirty days from the issuance of this opinion to either produce the challenged documents or submit an amended *Vaughn* index.

### 3. The Attorney Work–Product Privilege

 The defendants also invoke the attorney work-product privilege as grounds for withholding two documents, Utah–1g and Utah–3g.[16] Pl.'s Reply at 20. "The attorney work-product privilege protects disclosure of materials prepared by attorneys, or non-attorneys supervised by attorneys, in contemplation of litigation, that reveal information about an attorney's preparation and strategy relating to a client's case." *Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F.Supp.2d at 268. The attorney work-product privilege "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States,* 617 F.2d at 864. The privilege has been limited to documents prepared in contemplation of litigation. *Id.* (citing *Jordan v. U.S. Dep't of Justice,* 591 F.2d 753 (1978)); Fed.R.Civ.P. 26(b)(3). To meet their burden, the defendants must establish that the documents "must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind" and provide some indication whether the documents have been shared with third parties, which would amount to a waiver of the privilege. *Judicial Watch v. U.S. Postal Serv.,* 297 F.Supp.2d at 268 (citing *Coastal States,* 617 F.2d at 865).

---

**15.** The parties seem to indicate that Alaska–4g has now been released.

**16.** Two other documents that had been withheld pursuant to this privilege have now been released.

█ Neither of the documents withheld under the work-product privilege indicate their author or recipient. Thus, this Court has no context in which to assess whether the attorney work-product privilege protects the documents from disclosure. Furthermore, neither of the entries indicate that the documents were created in anticipation of litigation or that they have not been shared with third parties. For these reasons, the defendants have failed to satisfy their burden of proving that these documents need not be released pursuant to the work-product privilege and they must either release the challenged documents or submit a revised *Vaughn* index addressing these documents within thirty days of the issuance of this opinion.

**(B) Sufficient Segregation of Factual Information**

█ Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). However, "[i]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed *unless* they are inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260. (emphasis added). In asserting that the factual material is so intertwined with exempt information, the agency has "the burden of demonstrating that [the] withheld documents contain no reasonably segregable factual information." *Mokhiber v. Dep't of the Treasury*, 335 F.Supp.2d 65, 68–69 (D.D.C.2004) (citations omitted). The plaintiff has alleged that the defendants have failed, as to virtually every challenged document, to properly segregate out factual information or state why it cannot do so. However, the defendants contend that the declarations of Sue Ellen Sloca and Nancy Appler and the entries in the *Vaughn* index adequately explain that

factual portions of documents have been released when possible except to the extent that the facts are inextricably intertwined with the exempt portions of the documents. Def.'s Opp.'n at 8 (alleging that all factual information could not be disclosed otherwise the policy deliberations would also be exposed which, according to defendants, are exempt from disclosure).

█ The adequacy of the *Vaughn* index in regards to the segregability question turns on whether the agency has sufficiently explained why there was no reasonable means of segregating factual material from the claimed privileged material. "[A]gencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead Data*, 566 F.2d at 261. Therefore, factual material which does not bear on policy determinations must be segregated and produced in response to a plaintiff's FOIA requests. Furthermore, the agency must evaluate *each* document to determine if the segregable material can be provided to the requestor. *Summers*, 140 F.3d at 1081; *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C.Cir.1998) ("[n]either the [plaintiff] nor the court ... is obliged to accept the conclusion without more specification of the types of material in the file.") *Krikorian v. Dep't of State*, 984 F.2d 461, 466–67 (D.C.Cir.1993). Moreover, "the withholding agency must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King*, 830 F.2d at 224. The *Vaughn* index provided by the agency should "specify in detail which portions of the document are disclosable and which are allegedly exempt." *Vaughn*, 484 F.2d at 827.

■ Here, the defendants' *Vaughn* index fails the non-segregability test concerning many of the referenced documents. First, a blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability. *See Animal Legal Defense Fund,* 44 F.Supp.2d at 301–02. Rather, for *each* entry the defendant is required to "specify in detail which portions of the document are disclosable and which are allegedly exempt." *Id.* at 302 (citing *Schiller v. N.L.R.B.,* 964 F.2d 1205, 1210 (D.C.Cir. 1992)). It is apparent that the defendants have failed to make such findings for *each* document. As always, it is incumbent on the *agency* to prove that no segregable information exists. *Army Times Pub. Co. v. Dep't of Air Force,* 998 F.2d 1067, 1071 (D.C.Cir.1993). Without any description of the factual materials contained in the withheld documents, the agency has not satisfied its obligations. The declarations must afford the plaintiff "a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King,* 830 F.2d at 218. The plaintiff is not afforded that opportunity here, nor can the Court conduct a proper review. The Court must therefore conclude that defendants have not demonstrated that the factual information in the documents is not reasonably subject to segregation.[17] Accordingly, this Court will grant the plaintiff's motion for summary judgment on this point and order the defendants, within thirty days of the issuance of this opinion, to release the challenged documents or submit an amended *Vaughn* index concerning them.

**(C) The Adequacy and Reasonableness of the Search**

Finally, the plaintiff alleges that numerous documents were overlooked because the defendants conducted an inadequate search in response to its FOIA requests. Specifically, the plaintiff points to the defendants' failure to search for responsive records within the DOI's Office of the Solicitor ("SOL"). According to the plaintiff, the "DOI was required to search the [SOL] because the agency knew records responsive to TWS's April 14, 2003 request were there, and because the Office of the Solicitor is within the Interior Office of the Secretary, the office to which TWS addressed its request." Pl.'s Reply at 21. Moreover, because the Office of the Solicitor is part of, located within, and on the same floor as the Office of the Secretary (the office where the plaintiff addressed its April 14, 2004 FOIA request) the plaintiff argues that it was reasonable for the defendants to have searched the Office of the Solicitor to fulfill its obligation to perform a reasonable search. *Id.*

According to the defendants, they interpreted the plaintiffs' FOIA requests to not include a search of records from the SOL because the FOIA requests did not specifically request information from the SOL. Def.'s Mem. at 8. Rather, the defendants point out that the plaintiff's FOIA request was directed only to four offices: the National Park Service, the United States Fish & Wildlife Service, the Bureau of Land Management, and the Office of the Secretary of the Interior. Defs.' Reply at 2. The Department of Interior's Office of the Solicitor was not explicitly noted on plaintiff's FOIA request. And because the de-

---

**17.** The Court does not find it necessary to identify every entry in the *Vaughn* index which is deficient in this regard. It is clear that the defendant must, for each document, state whether they contain any segregable information. Such information is clearly either present or not in a document and the defendants can surely locate the deficient entries in the *Vaughn* index without this Court listing each of them.

fendants recognized the plaintiff as an organization with substantial experience making sophisticated FOIA requests, the defendants represent that it assumed that the plaintiff was not seeking information from the SOL, since it did not expressly request documents from that office in either of its two FOIA requests. *Id.* at 2–3. Therefore, records from DOI's SOL were not produced. The defendants assert that requiring production of documents from the SOL would go far beyond the requirement that FOIA requests be construed liberally. *Nation Magazine, Washington Bureau v. Customs Serv.,* 71 F.3d 885, 890 (D.C.Cir.1995).[18]

■■■ In its motion, the agency must show beyond a material doubt that it has conducted a search reasonably calculated to uncover all relevant documents. *Weisberg v. U.S. Dept. of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983). As the District of Columbia Circuit has made clear, "[t]he issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Id.* (quoting *Perry v. Block,* 684 F.2d 121, 128 (D.C.Cir.1982) (emphasis in original)). "The adequacy of an agency's search is measured by a 'standard of reasonableness' and is 'dependant upon the circumstances of the case.'" *Id.* (quoting *McGehee v. CIA,* 697 F.2d 1095, 1101 (D.C.Cir. 1983); *Founding Church of Scientology v. NSA,* 610 F.2d 824, 834 (D.C.Cir.1979)). "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry,* 684 F.2d at 128. To establish that an agency has conducted an adequate search, the government may rely on affidavits, as long as they are "reasonably detailed . . . setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. United States Coast Guard,* 180 F.3d 321, 326 (D.C.Cir.1999) (quoting *Oglesby,* 920 F.2d at 68); *see also Weisberg,* 627 F.2d at 370 ("in adjudicating the adequacy of the agency's identification and retrieval efforts, the trial court may be warranted in relying upon agency affidavits").

■■■ "Although a requester must 'reasonably describe [ ]' the records sought, . . . an agency also has a duty to construe a FOIA request liberally." *Nation Magazine,* 71 F.3d at 890. Furthermore, an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby,* 920 F.2d at 68. A recent decision lends support to plaintiff's argument that the search that was conducted in this case was inadequate. In *Defenders of Wildlife v. U.S. Dep't of Interior,* 314 F.Supp.2d 1 (D.D.C.2004), the court found that the agency had an affirmative duty to refer requests to other components of the agency which it reasonably knows might be responsive to specific FOIA requests. *Id.* at 13. There, the FOIA request was directed at documents related to compliance with federal ethics laws and regulations relating to conflicts of interest involving the Deputy Secretary of Interior. *Id.* at 1. The plaintiffs submitted a FOIA request directly to DOI seeking

---

**18.** It should be noted that the defendants are currently processing a FOIA request from a different organization, which is substantially similar in scope to the plaintiff's FOIA request, except the other request specifically identified documents in the possession of the SOL. The defendants have advised the Court that it intends to make available to the plaintiff any releasable records found during its current search. *See* Defendants' Notice of Parallel FOIA Request (June 29, 2004).

such documentation. However, the DOI failed to search other DOI offices, including (as in the case before this Court) the Solicitor's Office and the Office of the Inspector General. *Id.* at 13. Because plaintiff directed their inquiry solely to the Office of the Secretary, no records were searched in the most likely places where records responsive to the request would be located. The court noted that "the regulations currently in effect ... require an agency that receives a request for materials 'not in its possession, but which it knows another bureau has or is likely to have,' to 'refer the request to that bureau(s) for response.'" *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F.Supp.2d at 7 (quoting 43 C.F.R. § 2.22(a)(1) (2004)).[19] The court concluded that it would "strain credulity to find that the Secretary's Office did not know that the Office of the Inspector General and the Solicitor's Office would likely be repositories of responsive records." *Id.*

19. 43 C.F.R. § 2.22(a)(1) states:

If a bureau receives a request for records not in its possession, but which it knows another bureau has or is likely to have, it will refer the request to that bureau(s) for response. It also will notify you of the referral in writing and provide the name of a contact in the other bureau(s) to which the referral was made. The time limit for responding to your request starts when the request reaches the bureau office that has the records.

*Id.*

20. The plaintiff initially alleged that the defendants also improperly failed to search personal email accounts of DOI employees. Since this search has now been completed, the plaintiff appears to have abandoned this argument, except to the extent that the defendants have not searched the email accounts of employees in the SOL. Since no search of the SOL has been completed yet, this Court assumes that a search of personal email accounts will occur as was done in other departments. Thus, the Court need not address this issue at this time. If the defendants fail

■ Consistent with the ruling in *Defenders of Wildlife*, it is clear that the defendants in this case failed to preform an adequate search. Because the plaintiff requested documents pertaining to both agency policies and documents relating to the settlement in *State of Utah v. Norton*, it is inconceivable that the defendants would not reasonably believe that documents relating to a *lawsuit* and its *settlement* would not be located in the Office of the Solicitor. Accordingly, for the reasons set forth in *Defenders of Wildlife*, this Court concludes that the defendants failure to search the SOL was unreasonable and the search was therefore inadequate.[20] The defendants are now required to conduct a search of the Office of the Solicitor and release responsive documents unless they are exempt.

## V. Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment is granted

to undertake a search of the personal email accounts of the SOL employees, the plaintiff is welcome to again challenge the sufficiency of the search. Additionally, the plaintiff also contends that the search was unreasonable because it did not produce any documents relating to the settlement discussions that would have been created prior to April 1, 2004. Pl.'s Mem. at 40. Since this Court has concluded that it was unreasonable for the defendants not to search the Office of the Solicitor, and since such documents will likely be found at that Office, the Court need not decide this issue at this stage in the litigation. Following the completion of the search being ordered pursuant to this opinion, the plaintiff is welcome to again challenge the search. Finally, the plaintiff has alleged that the defendants failed to search for telephone logs. However, in the supplemental declaration filed by Nancy Appler, it is clear that such a search took place following the filing of the plaintiff's initial pleading. Declaration of Nancy Appler ¶¶ 5, 6, 7. Since the plaintiff did not address the issue in its reply, this Court assumes that the plaintiff has abandoned its claim regarding the telephone logs.

in part and denied in part and the defendants' motion for summary judgment is denied.[21]

**21.** An Order consistent with the Court's ruling was issued on September 30, 2004.